UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 06/29/2017

VIOLETA HERNANDEZ, et al.,

                              Plaintiffs,

            v.

THE CITY OF NEW YORK,

                              Defendant.

No. 16-CV-3445 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiffs bring this action on behalf of themselves and similarly situated individuals against the City of New York (the "City"), for violations of the Fair Labor Standards Act's ("FLSA") overtime provisions.[1] Plaintiffs move for conditional certification of a collective action, an order directing the City to provide the names and contact information of putative collective action members, and leave to provide notice to putative collective action members. For the reasons set forth below, Plaintiffs' motion is granted.

## BACKGROUND[2]

Plaintiffs are or were employed by the City's Human Resources Administration ("HRA") in the positions of Fraud Investigator 1, Fraud Investigator 2, or Associate Fraud Investigator 1. Plaintiffs have worked at several different HRA facilities, including at 250 Livingston Street in

---

[1] Although Violeta Hernandez is presently listed as a representative Plaintiff in this action, she voluntarily dismissed her claims on February 13, 2017. *See* Notice of Voluntary Dismissal (Dkt. 38). Accordingly, Hernandez's name shall be removed from the caption.

[2] These facts are drawn from the Second Amended Complaint ("SAC") (Dkt. 39), and the declarations of four representative Plaintiffs and one opt-in Plaintiff. *See* Decl. of Tashon Cooley (Dkt. 34-2); Decl. of Jerome Adams (Dkt. 34-3); Decl. of Margaret Cherry (Dkt. 34-4); Decl. of Juan Taronji (Dkt. 34-5); Decl. of Michelle Hackett (Dkt. 34-6).

Brooklyn, New York and at 250 Church Street in New York, New York.  *See, e.g.*, Cooley Decl. ¶ 2; Adams Decl. ¶ 2; Cherry Decl. ¶ 2; Taronji Decl. ¶ 2; Hackett Decl. ¶ 2.

Fraud Investigator 1s, Fraud Investigator 2s, and Associate Fraud Investigator 1s are all responsible for investigating fraudulent activities involving social benefit programs or tax laws in New York City.  *See* Cooley Decl. ¶ 3; Adams Decl. ¶ 3; Cherry Decl. ¶ 3; Taronji Decl. ¶ 3; Hackett Decl. ¶ 3.  The specific job responsibilities for employees in all three positions include: (i) writing reports; (ii) interviewing individuals' clients, family members, and landlords, among others; (iii) verifying individuals' income, assets, identities, credit reports, and residency statuses; and (iv) checking and reviewing computer systems and databases.  *See* Cooley Decl. ¶ 3; Adams Decl. ¶ 3; Cherry Decl. ¶ 3; Taronji Decl. ¶ 3; Hackett Decl. ¶ 3.  The declarations of the four representative Plaintiffs and one opt-in Plaintiff each state that the specific tasks or programs assigned to individuals in these positions "may vary slightly from person to person."  Cooley Decl. ¶ 6; Adams Decl. ¶ 6; Cherry Decl. ¶ 6; Taronji Decl. ¶ 6; Hackett Decl. ¶ 6.  The job responsibilities of employees in these positions may differ, for example, on the basis of the employee's title and experience.  Fraud Investigator 2s are generally more experienced than Fraud Investigator 1s and are permitted to testify in court.  *See* Cooley Decl. ¶ 4; Adams Decl. ¶ 4; Cherry Decl. ¶ 4; Taronji Decl. ¶ 5; Hackett Decl. ¶ 4.  Associate Fraud Investigator 1s, in turn, are responsible for "using their expertise" to assist other investigators, reviewing case work, and suggesting corrections to others' work.  *See* Cooley Decl. ¶ 5; Taronji Decl. ¶ 4.

The four representative Plaintiffs, as well as the one opt-in Plaintiff who submitted a declaration, are scheduled to work forty hours each week.  *See* Cooley Decl. ¶ 7; Adams Decl. ¶ 7; Cherry Decl. ¶ 7; Taronji Decl. ¶ 7; Hackett Decl. ¶ 7.  However, each of these Plaintiffs alleges that, in practice, he or she was required to work outside his or her regular work schedule because

each had a "large volume of work which must completed in a timely manner pursuant to the City's work rules" and which could not be completed during his or her scheduled shifts.  *See* Cooley Decl. ¶ 13; Adams Decl. ¶ 13; Cherry Decl. ¶ 13; Taronji Decl. ¶ 13; Hackett Decl. ¶ 13. According to these Plaintiffs, they typically worked additional hours by, for example, arriving before their scheduled shifts, working during their unpaid meal breaks, and continuing to work after their shifts ended.  *See* Cooley Decl. ¶¶ 7–9; Adams Decl. ¶¶ 7–9; Cherry Decl. ¶¶ 7–9; Taronji Decl. ¶¶ 7–9; Hackett Decl. ¶¶ 7–9.  Plaintiffs explain that, based on their experience and observations, all other Fraud Investigator 1s, Fraud Investigator 2s, and Associate Fraud Investigator 1s worked before their shifts began, during their meal breaks, and/or after their shifts ended.  *See* Cooley Decl. ¶ 10; Adams Decl. ¶ 10; Cherry Decl. ¶ 10; Taronji Decl. ¶ 10; Hackett Decl. ¶ 10.  According to Plaintiffs, the City knew or should have known that Fraud Investigator 1s, Fraud Investigator 2s, and Associate Fraud Investigator 1s work beyond their scheduled shifts because, *inter alia*, their hours are captured on the City's time-keeping system, called "City-Time."  *See* Cooley Decl. ¶ 14; Adams Decl. ¶ 14; Cherry Decl. ¶ 14; Taronji Decl. ¶ 14; Hackett Decl. ¶ 14.

The representative Plaintiffs and the opt-in Plaintiff state that the City has a "policy" under which employees are not paid for overtime work unless they receive prior approval.  *See* Cooley Decl. ¶ 16; Adams Decl. ¶ 16; Cherry Decl. ¶ 16; Taronji Decl. ¶ 16; Hackett Decl. ¶ 16. These Plaintiffs assert that the City's policy is that employees are free to work beyond their scheduled shifts or during their mealtimes, but that they will not be compensated for this work unless a supervisor approves it in advance.  *See id.*  Plaintiffs further claim that the City does not take measures to stop them from working additional hours.  *See id.*

According to Plaintiffs, the City has also implemented a cash overtime limit or "cap." *See* Cooley Decl. ¶ 17; Adams Decl. ¶ 17; Cherry Decl. ¶ 17; Taronji Decl. ¶ 17; Hackett Decl. ¶ 17.  The City will only pay cash for pre-approved overtime work up to a certain number of hours.  *See id.*  If an employee's pre-approved overtime hours exceed that limit, the employee receives only "compensatory time," not cash.  *See id.*  This compensatory time is paid at a "straight-time rate"—that is, a rate of one hour of compensatory time for each hour of pre-approved overtime work.  *See id.*  Thus, according to Plaintiffs, when an employee works pre-approved overtime hours in excess of the City's limit on cash overtime hours, she does not receive overtime compensation at a rate of one and one-half times her regular rate of pay.  *See* Cooley Decl. ¶ 19; Adams Decl. ¶ 19; Cherry Decl. ¶ 19; Taronji Decl. ¶ 19; Hackett Decl. ¶ 19.

The representative Plaintiffs and the opt-in Plaintiff also assert that they received benefit payments in addition to their base salaries.  *See* Cooley Decl. ¶ 20; Adams Decl. ¶ 20; Cherry Decl. ¶ 20; Taronji Decl. ¶ 20; Hackett Decl. ¶ 20.  These benefits include, for example, meal allowances and nightshift differentials.  *See* Cooley Decl. ¶¶ 20–21; Adams Decl. ¶¶ 20–21; Cherry Decl. ¶¶ 20–21; Taronji Decl. ¶¶ 20–21; Hackett Decl. ¶¶ 20–21.  However, these Plaintiffs state that the City has a "policy and practice" of excluding meal allowances and nightshift differentials from the regular rate of pay used to calculate overtime compensation.  *See* Cooley Decl. ¶ 21; Adams Decl. ¶ 21; Cherry Decl. ¶ 21; Taronji Decl. ¶ 21; Hackett Decl. ¶ 21.

Plaintiffs further claim that the City often delays the payment of their cash overtime compensation until after at least one additional pay period has passed.  *See* Cooley Decl. ¶ 22; Adams Decl. ¶ 22; Cherry Decl. ¶ 22; Taronji Decl. ¶ 22; Hackett Decl. ¶ 22.  Plaintiffs suggest that this delay results either from the failure of their managers or supervisor to transmit information to the payroll department or from the City's "arbitrary cap on cash overtime."  *See id.*  Plaintiffs claim

that, based on their knowledge and experience, the City's policy of delaying payments of cash overtime compensation applies to all HRA employees.  *See* Cooley Decl. ¶ 23; Adams Decl. ¶ 23; Cherry Decl. ¶ 23; Taronji Decl. ¶ 23; Hackett Decl. ¶ 23.

On May 9, 2016, Plaintiffs filed their initial complaint in this action, which they amended on July 25, 2016.  *See* Compl. (Dkt. 1); Am. Compl. (Dkt. 18).  On January 23, 2017, the Court denied the City's motion to dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *See* Dkts. 30, 40.  On February 14, 2017, Plaintiffs filed a Second Amended Complaint, which asserts four claims for violations of the FLSA's overtime provisions: (1) failure to pay overtime, (2) failure to properly calculate the regular rate of pay, (3) failure to pay overtime in a timely manner, and (4) failure to pay overtime at a rate of one and one-half times the regular rate of pay.  *See* SAC ¶¶ 22–45.  Plaintiffs seek declaratory judgment, an accounting of all compensation to which plaintiffs are entitled, liquidated damages, interest, attorney's fees, and costs.  *See id.* at 15.

On February 3, 2017, Plaintiffs filed the instant motion for conditional certification of a collective action, accompanied by sworn declarations of four representative Plaintiffs and one opt-in Plaintiff, and a proposed notice to collective action members.  *See* Pls.' Mot. (Dkt. 33); Pls.' Mem. (Dkt. 34).  On March 15, 2017, the City filed an opposition to Plaintiffs' motion.  *See* Def.'s Opp'n Mem. (Dkt. 44).  On March 29, 2017, Plaintiffs filed a reply.  *See* Pls.' Reply Mem. (Dkt. 47).

## LEGAL STANDARD

Section 216(b) provides that an employee bringing an action for violations of the FLSA's overtime provisions may proceed "for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  "Although they are not required to do so by FLSA,

district courts 'have discretion, in appropriate cases, to implement § 216(b) by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (alterations omitted) (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)). "Orders authorizing notice are often referred to as orders 'certifying' a collective action, even though the FLSA does not contain a certification requirement." *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 475 (S.D.N.Y. 2010).

In determining whether to certify a collective action, courts conduct a two-step analysis, which the Second Circuit has endorsed as "sensible." *Myers*, 624 F.3d at 555. First, a district court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Id.* The court may provide such notice "after plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id.* (*quoting Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). "The key element of that showing is a shared unlawful policy; that is, while the proposed collective need not be identical in every possible respect, its potential members must be similarly situated with respect to the allegedly unlawful policy or practice." *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 479 (S.D.N.Y. 2016) (internal quotation marks omitted). This "modest factual showing" should "remain a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Myers*, 624 F.3d at 555 (emphasis in original) (citations omitted); *see also, e.g.*, *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 478 (S.D.N.Y. 2016) ("[I]t is widely recognized that

the standard for conditional collective action certification is not a stringent one." (citation omitted)); *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 158–59 (S.D.N.Y. 2014) ("Because the determination that plaintiffs are similarly  situated is merely a preliminary one, courts generally grant conditional certification.").

Nonetheless, certification is not automatic, and plaintiffs cannot secure it through conclusory allegations or "unsupported assertions." *Myers*, 624 F.3d at 555 (citation omitted).  Rather, "[p]laintiffs must offer something of evidentiary value to demonstrate that similarly situated employees exist and, where plaintiffs fail to meet this minimal requirement, their motion for conditional collective action certification will be denied." *Benavides*, 166 F. Supp. 3d at 481 (alterations omitted) (internal quotation marks omitted).

"[C]ourts typically decide the question of preliminary certification—not having had the benefit of full discovery—based on the pleadings, affidavits and declarations submitted by the plaintiff." *Korenblum*, 195 F. Supp. 3d at 480 (internal quotation marks omitted).  "When there are ambiguities in the papers seeking collective action status, the court must draw all inferences in favor of the plaintiff at the preliminary certification stage." *Warman v. Am. Nat'l Standards Inst.*, 193 F. Supp. 3d 318, 323 (S.D.N.Y. 2016) (alteration omitted) (internal quotation marks omitted).  "Thus, at this stage, the court may not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Id.* (internal quotation marks omitted); *see also Hoffmann–La Roche*, 493 U.S. at 174 ("[T]rial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action.").

At the second stage, following discovery, a district court determines whether the plaintiffs who have opted into the collective action are, in fact, "similarly situated" to the named

plaintiffs.  *See Myers*, 624 F.3d at 55.  "The action may be 'de-certified' if the record reveals that

they are not, and the opt-in plaintiffs claims may be dismissed without prejudice."  *Id.*

## DISCUSSION

### A.  Conditional Certification

Plaintiffs have satisfied their minimal burden of demonstrating that they are similarly sit-

uated to members of the putative collective action, and that together they were subjected to the

same unlawful policy or plan.

First, Plaintiffs have demonstrated that they are similarly situated with respect to their job

responsibilities.  The representative Plaintiffs and opt-in Plaintiff state that Fraud Investigator 1s,

Fraud Investigator 2s, and Associate Fraud Investigator 1s share a common purpose: to investi-

gate fraud activities involving social benefit programs or tax laws in New York City.  Day to

day, these employees perform the same basic tasks, including writing reports, conducting inter-

views, verifying income and other information, and reviewing computer systems and databases.

To be sure, Plaintiffs' responsibilities vary to some degree.  For example, Fraud Investigator 2s,

who are more experienced than Fraud Investigator 1s, are permitted to testify in Court, and Asso-

ciate Fraud Investigator 1s are tasked with at least some supervisory or managerial

responsibilities.  At this preliminary stage, however, any differences in Plaintiffs' job responsi-

bilities appear minor: employees in all three positions share the same basic responsibilities and

perform the same daily tasks, with any variations largely attributable to their levels of experi-

ence.  Accordingly, Plaintiffs have adequately demonstrated that they are similarly situated with

respect to their duties.

Second, Plaintiffs have demonstrated that they are similarly situated with respect to their

work schedules and hours.  Each of the representative Plaintiffs, as well as the opt-in Plaintiff,

was scheduled to work forty hours per week, yet each worked additional hours to meet the demands of his or her position.  Plaintiffs explain that they work additional hours by following the same basic schedule: they arrive before their scheduled shifts, work through their one-hour meal periods, and/or continue working after their scheduled shifts have ended.  Moreover, each of these Plaintiffs has provided an illustrative example of the hours he or she worked in a particular week, and the total hours each worked fall within a relatively close range—from 47.5 to 53.75 hours in one week.  Finally, each of the Plaintiffs explains that his or her hours are recorded in the City's time-keeping system, as each signs into this system when he or she begins work.  The Court thus concludes that Plaintiffs have demonstrated that their work schedules and hours are sufficiently similar for conditional certification.

Third, Plaintiffs have adequately demonstrated that they are subjected to the same allegedly unlawful policies or practices.  In particular, the representative Plaintiffs and opt-in Plaintiff allege that they are victims of at least four policies or practices that, in their view, violate the FLSA's overtime provisions.  The first such policy is the pre-approval requirement: Plaintiffs claim that, pursuant to the City's "policy," they are not paid for overtime work that is not pre-approved by their supervisors, even though the City is aware that its employees regularly work more than the pre-approved overtime hours to complete their work.  As the City argues, it is not entirely clear how often Plaintiffs work overtime with the City's knowledge but without advance approval of their supervisors, or why their supervisors would refuse to approve any overtime work.  At this stage, however, Plaintiffs' assertions that they are not paid for any overtime work performed without prior approval on at least some occasions is sufficient to suggest that Plaintiffs are subject to the same allegedly unlawful policy.

The second purported policy is the City's practice of paying overtime as "compensatory time" at a rate below one and one-half times Plaintiffs' regular rate of pay.  Each Plaintiff asserts that the City has imposed a "cap" on cash overtime: the City pays them overtime wages in cash only up to a certain maximum number of hours, above which the City awards "compensatory time" instead.  This policy is unlawful, in Plaintiffs' view, because compensatory time is paid as "straight-time," rather than at a rate of one and one-half their regular rate of pay.

The third allegedly unlawful policy is the City's failure to include Plaintiffs' benefit payments, including meal allowances and nightshift differentials, in their regular rate of pay when calculating their overtime compensation.  Each Plaintiff alleges that he or she has received at least some payments in addition to his or her base salary in the form of meal allowances and nightshift differentials.  Because the City allegedly excluded these payments from Plaintiffs' regular rates of pay, Plaintiffs argue, the City calculated their overtime wages using an artificially low rate of pay.  As the City notes, Plaintiffs' declarations include very little detail regarding benefit payments: the declarations do not specify how often Plaintiffs received meal allowances or nightshift differentials, nor do they provide examples of instances in which they have received these benefit payments.  Nonetheless, Plaintiffs' declarations are sufficient to demonstrate that they each received at least some payments in addition to their salaries  that were not included in their regular rate of pay—a policy that, if proven, may violate the FLSA's overtime provisions.

The final policy Plaintiffs identify is the late payment of overtime compensation.  Each Plaintiff claims that his or her overtime compensation was not always awarded on time; indeed, each asserts that his or her overtime was not paid until more than one additional pay period had passed.  Plaintiffs attribute this delay to the same causes—namely, their managers' or supervisors' failure to submit the necessary paperwork on time, or the City's purported policy limiting

the amount of cash overtime wages each employee may receive.  Plaintiffs have thus provided an adequate showing that they are similarly situated with respect to the City's allegedly unlawful overtime policies and practices.

The City argues that conditional certification is nonetheless inappropriate for several reasons.  First, the City claims that Plaintiffs are not similarly situated because Associate Fraud Investigator 1s, unlike Fraud Investigator 1s and Fraud Investigator 2s, are classified as FLSA-exempt.  *See* Def.'s Opp'n Mem. at 7–8.  But as several courts in this District have recognized, "the possible existence of exemptions is a merits issue that is not relevant at the conditional certification stage."  *Jackson*, 298 F.R.D. at 161; *see also, e.g.*, *Martin v. Sprint/united Mgmt. Co.*, No. 15-CV-5237 (PAE), 2016 WL 30334, at *14 n.30 (S.D.N.Y. Jan. 4, 2016) ("[The defendant] is . . . wrong to claim that the potential need for individualized inquiries into whether an FLSA exemption applies precludes conditional certification"); *Trawinski v. KPMG LLP*, No. 11-CV-2978 (PAC), 2012 WL 6758059, at *4 (S.D.N.Y. Dec. 21, 2012) (finding that defendants' claim that certain members of a proposed collective action "qualify them for the administrative or professional exemptions to the FSLA" is "a merits argument . . . and is inappropriate at this stage of the litigation").  Indeed, "[i]f this Court were to credit [the City's] argument, no FLSA action that is premised upon an alleged misclassification under [an FLSA] exemption could be resolved through the collective action process, thereby defeating the stated purpose of the FLSA and wasting judicial resources by requiring courts to consider each individual plaintiff's claims in a separate lawsuit."  *Indergit v. Rite Aid Corp.*, No. 08-CV-11364 (PGG), 2010 WL 2465488, at *9 (S.D.N.Y. June 16, 2010).  Moreover, even if the Court could consider whether any FLSA exemptions may apply to members of the proposed collective action, the City's claim that

Associate Investigator 1s are exempt is based on nothing more than the City's own internal classification of its employees, and not on these employees' duties, rates of pay, or any other evidence suggesting that they are indeed exempt from the FLSA's overtime requirements.  Accordingly, the possibility that some but not all of the proposed collective action members may be exempt from the FLSA does not, at this stage, establish that Plaintiffs are not similarly situated or that certification would otherwise be improper.

Second, the City argues that Plaintiffs have not demonstrated that they are similarly situated with respect to their job duties because they have failed to provide a declaration from a Plaintiff currently holding the title of Fraud Investigator 1.  *See* Def.'s Opp'n Mem. at 8–9.  The City is correct insofar as the absence of any declaration from a Fraud Investigator 1 leaves open at least some questions regarding the similarity between the duties of these employees and those of other proposed collective action members.  Nonetheless, four of the five Plaintiffs who did submit declarations—Adams, Cherry, Cooley, and Hackett—assert that they previously held the title of Fraud Investigator 1, and they do not claim that their job responsibilities changed in any material way when their titles changed to Fraud Investigator 2 or Associate Fraud Investigator 1.  Moreover, the representative Plaintiffs all claim that, based on their knowledge and experience, Fraud Investigator 1s have similar responsibilities and perform similar tasks as do Fraud Investigator 2s.  To be sure, the past experiences of the representative Plaintiffs in the role of Fraud Investigator 1—some of which date back more than a decade—may ultimately fail to show that employees in this position were, in fact, similarly situated to other members of the proposed collective action during the relevant period.  It also may be true that the representative Plaintiffs' "knowledge" and "experience" regarding the role of Fraud Investigator 1 is insufficient to show

that, during the relevant period, employees with this title did, in fact, have similar job responsi-

bilities as the other members of the proposed collective action.  At this preliminary stage,

however, Plaintiffs have provided at least a "modest factual showing" that employees holding all

three titles were similarly situated with respect to their job responsibilities.  *Myers*, 624 F.3d at

555 (citation omitted).

       Finally, the City argues that Plaintiffs have not shown that they share sufficiently similar

job responsibilities because Associate Fraud Investigator 1s, unlike other members of the pro-

posed collective action, are tasked with some managerial or supervisory duties.  *See* Def.'s

Opp'n Mem. at 9–10.  It is true, as the City notes, that the responsibilities of Associate Fraud In-

vestigator 1s appear to differ, to some degree, from those of other proposed collective action

members.  For instance, according to Taronji's declaration, Associate Fraud Investigator 1s are

responsible for "reviewing case work and suggesting corrections"—a task that is not mentioned

in the descriptions of job responsibilities for Fraud Investigator 1s or Fraud Investigator 2s.  Ta-

ronji Decl. ¶ 4.  Nonetheless, this relatively vague description of supervisory authority does not

suggest, at this stage, that an Associate Fraud Investigator 1 is tasked with materially different

responsibilities than other members of the proposed collective action.  In addition, each of the

representative Plaintiffs claims that, despite "slight" variations in the "specific tasks" or "pro-

grams" assigned to proposed collective action members, all share the same basic responsibilities.

Therefore, the possibility that the job duties of Associate Fraud Investigator 1s differed some-

what from those of other proposed collective action members is not sufficient, at this stage, to

defeat Plaintiffs' motion for conditional certification.  *See, e.g.*, *Jackson*, 298 F.R.D. at 161 (re-

jecting the argument that conditional certification should be denied on the grounds that some but

not all members of the proposed collective action "have various secondary job duties" and "were

subject to varying levels of supervision," as "Plaintiff need only demonstrate that her position is similar to that of putative class members, not identical, and [the defendant] cannot defeat this showing by arguing that individual issues may predominate over common ones"); *see generally Korenblum*, 195 F. Supp. 3d at 479 ("[T]he proposed collective need not be identical in every possible respect . . . ." (internal quotation marks omitted)); *Warman*, 193 F. Supp. 3d at 323 ("The relevant issue is not whether the named plaintiff and potential opt-in plaintiffs are identical in all respects . . . .").

In sum, the Court finds that Plaintiffs have demonstrated that they are similarly situated to potential opt-in members of the proposed collective action.  Accordingly, the Court grants Plaintiffs' motion for conditional certification.  *See Myers*, 624 F.3d at 555.

### B.  Notice to Collective Action Members

"Upon authorizing the distribution of notice to potential opt-in plaintiffs, the district court maintains broad discretion over the form and content of the notice."  *Johnson v. Carlo Lizza & Sons Paving, Inc.*, 160 F. Supp. 3d 605, 612 (S.D.N.Y. 2016) (internal quotation marks omitted). "When exercising its broad discretion to craft appropriate notices in individual cases, District Courts consider the overarching policies of the collective suit provisions and ensure that putative plaintiffs receive accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."  *Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 116 (S.D.N.Y. 2015) (internal quotation marks omitted).  A notice should include, at a minimum:

> the purpose of the notice, the nature of the lawsuit, the proposed class composition, the legal effect of joining the lawsuit, the fact that the court has not taken any position regarding the merits of the lawsuit, how to join the lawsuit, the purely voluntary nature of the decision and the legal effect of not joining the lawsuit, the prohibition against retaliation, and the relevant contact information for any inquiries.

14

*Jackson*, 298 F.R.D. at 169–70 (citing ABA, *The Fair Labor Standards Act*, 19–78–79 (Ellen C. Kearns et al. eds., 2d ed. 2010)).  Plaintiffs have submitted a proposed notice of this FLSA action for the Court's consideration and request that the Court direct the issuance of this notice to all prospective collective action members.  *See* Pl.'s Mem. Ex. A (the "Notice") (Dkt. 34-1).  The City objects to the Notice on several grounds.  The Court concludes that Plaintiffs should be permitted to send notice to the putative collective, subject to the modifications discussed below.

### 1.  Scope of the Notice

Plaintiffs propose that the Notice be sent to all individuals who work or have worked in the positions of Associate Fraud Investigator 1, Fraud Investigator 1, or Fraud Investigator 2 at any HRA facility since May 9, 2013.  Notice at 1.  The City requests that the scope of the Notice be narrowed in two respects: (1) the Notice should exclude Associate Fraud Investigator 1s; (2) the Notice should be limited to employees who work or have worked at two HRA facilities.  This request is denied.

First, the City argues that the proposed collective should exclude Associate Fraud Investigator 1s, as these employees are not, in the City's view, similarly situated to Fraud Investigator 1s and Fraud Investigator 2s.  *See* Def.'s Opp'n Mem. at 15.  For the reasons discussed above, the Court disagrees.  Plaintiffs may therefore provide notice to all employees who work or have worked in the positions of Associate Fraud Investigator 1, Fraud Investigator 1, or Fraud Investigator 2.

Second, the City argues that the proposed collective should be limited to employees at the two HRA facilities where the representative Plaintiffs currently work: 250 Livingston Street, Brooklyn, NY and 250 Church Street, New York, New York.  *See* Def.'s Opp'n Mem. at 15.  This limitation is unnecessary.  "In this Circuit, courts have regularly found named plaintiffs to

be similarly situated to employees at locations where they did not work, provided that the plaintiffs demonstrate that they were all subject to the same allegedly unlawful policy or practice." *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013); *see also, e.g.*, *Morris v. Lettire Constr., Corp.*, 896 F. Supp. 2d 265, 271 (S.D.N.Y. 2012) ("[C]ourts frequently authorize notice across all of the defendant's work sites.").  Here, the representative Plaintiffs and the opt-in Plaintiff have adequately demonstrated that they were subjected to the same allegedly unlawful policies or practices, regardless of their location: Plaintiffs' declarations assert that Defendant's overtime policies reflected the policies of "the City" and applied to "all HRA employees."  *See, e.g.*, Adams Decl. ¶¶ 17, 19, 23.  Moreover, the representative Plaintiffs and the opt-in Plaintiff have served as investigators at several other HRA facilities, and their declarations do not suggest that their responsibilities or the City's overtime policies varied from location to location.  Finally, the City has not argued that Fraud Investigator 1s, Fraud Investigator 2s, or Associate Fraud Investigator 1s work only at the Livingston Street and Church Street locations, or that its overtime practices differ in any way among its facilities.  Thus, the Court denies the City's request to narrow the proposed collective on the basis of employment location.  *See, e.g.*, *Garcia v. Pancho Villa's of Huntington Vill., Inc.,* 678 F. Supp. 2d 89, 93–94 (E.D.N.Y. 2010) (rejecting the argument that plaintiffs, who all worked at the same restaurant, were not similarly situated to employees at two other restaurants owned by the same individual).

### 2.  Content of the Notice

The City requests several amendments to the content of the Notice.  First, the City argues that the Notice should provide additional details regarding its position with respect to this litigation, including that it "plans to request that the Court decertify the collective action as soon as possible and/or dismiss the lawsuit, as they have the right to do."  Def.'s Opp'n Mem. at 16.  The

16

proposed notice states that "Defendant maintains that all employees employed by the City of New York at any Human Resources Administration were compensated appropriately and lawfully, and that Plaintiffs' lawsuit is meritless."  Notice at 2.  This language is adequate: it informs potential opt-in plaintiffs of the City's basic position in this litigation.  It is not necessary, as the City asserts, to include details regarding the City's contemplated actions in this litigation, such as its "plans" to request decertification or dismissal of this action.  Including such information in the Notice may well end in confusion, particularly if the City's plans change during the course of this litigation.  *See, e.g.*, *Bittencourt*, 310 F.R.D. at 117 (approving statement that the defendant "denies that it violated the law, that it owes any employee any additional compensation, and that it owes liquidated damages" and denying the defendants' request to include the statement that they "anticipate moving to decertify the collective action at the close of discovery"); *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 59 (S.D.N.Y. 2009) (approving statement that the defendant "denies that they violated the Fair Labor Standards Act"); *cf. Shajan v. Barolo, Ltd.*, No. 10-CV-1385 (CM), 2010 WL 2218095, at *2 (S.D.N.Y. June 2, 2010) ("Defendants will not be permitted to include any statement of position in the notice . . . .").  Accordingly, the Court will not require Plaintiffs to amend the Notice's statement of the City's position.

The City next argues that the Notice should be amended to inform prospective members of the putative collective action of their potential discovery obligations.  *See* Def.'s Opp'n Mem. at 16–17.  The Court agrees.  Courts routinely grant requests "that prospective members be notified of the possibility that they will be required to participate in discovery and testify at trial." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011) (collecting cases); *see also, e.g.*, *Martin*, No. 15-CV-5237 (PAE), 2016 WL 30334, at *19 ("A brief explanation of the potential responsibilities of opt-in plaintiffs is warranted . . . as it will help putative

class members make an informed decision about whether to join this action."); *Dilonez v. Fox Linen Serv. Inc.*, 35 F. Supp. 3d 247, 255 (E.D.N.Y. 2014) ("Courts in the Second Circuit routinely approve the inclusion of a neutral and nontechnical reference to discovery obligations to be included in the Notice." (internal quotation marks omitted)).  "This information will help potential plaintiffs determine whether they would like to opt in to this action, and is commonly used in such notices in this District." *Johnson*, 160 F. Supp. 3d at 612 (collecting cases).  The Court thus directs Plaintiffs to amend the Notice to include the following language, which "has been widely accepted by courts in this Circuit": "If you join this lawsuit, you may be asked to give testimony and information about your work for [the Human Resources Administration], to help the Court decide whether you are owed any money." *Dilonez*, 35 F. Supp. 3d at 255 (internal quotation marks omitted).

The City argues that the Notice should also advise potential plaintiffs that they may retain their own counsel. *See* Def.'s Opp'n Mem. at 17.  The Court again agrees. "Courts frequently approve language clarifying that opt-in plaintiffs are not required to accept plaintiffs' counsel as their own." *Martin*, No. 15-CV-5237 (PAE), 2016 WL 30334, at *19 (internal quotation marks omitted); *see also, e.g.*, *Serebryakov v. Golden Touch Transp. of NY, Inc.*, 181 F. Supp. 3d 169, 177 (E.D.N.Y. 2016) ("The notice should be modified so that potential plaintiffs are informed that they may retain their own counsel, should they choose to join the within litigation, as an alternative to plaintiffs' counsel's firm." (internal quotation marks omitted)); *Benavides*, 166 F. Supp. 3d at 486 (explaining that notice should "make[] explicit that opt-in plaintiffs can retain their own counsel if they choose"); *Whitehorn*, 767 F. Supp. 2d at 450 ("The Notice should also be amended, as Defendants request, to state that participating plaintiffs may retain their own

counsel.").  Plaintiffs are thus directed to amend the Notice to state that plaintiffs may retain their own counsel if they choose to join the collective action.

The City next argues that the Notice should include contact information for defense counsel.  "The Court agrees with other courts in this Circuit, which have generally concluded that the contact information of defendants' counsel is appropriate for inclusion in a notice of collective action."  *Benavides*, 166 F. Supp. 3d at 486 (alteration omitted) (internal quotation marks omitted); *see also, e.g.*, *Martin*, No. 15-CV-5237 (PAE), 2016 WL 30334, at *17 ("Enclosure of [contact information for defense counsel] is routine, and it . . . should be included in plaintiffs' Notice."); *Bittencourt*, 310 F.R.D. at 118 (granting defendants' request "that their counsel's name, address, and telephone number be included on the notice"); *Escano v. N & A Produce & Grocery Corp.*, No. 14-cv-4239 (PAC), 2015 WL 1069384, at *2 (S.D.N.Y. Mar. 11, 2015) ("Courts regularly permit inclusion of defense counsel's contact information on such notices." (citation omitted)).  Plaintiffs are thus directed to amend the Notice to include defense counsel's contact information.

Finally, the City argues that the Notice should omit all references to Violeta Hernandez, who has voluntarily dismissed her claims.  *See* Notice of Voluntary Dismissal (Dkt. 38).  The Court agrees.  References to Hernandez may well confuse potential opt-in plaintiffs, particularly if they learn that she is not in fact a party to this action.  Accordingly, Plaintiffs are directed to remove references to Hernandez in the Notice.

### 3.  Dissemination of the Notice

Plaintiffs request permission to issue the Notice to the prospective members of the collective action through mail and e-mail.  *See* Mot. at 2.  The City requests that notice be disseminated only through first-class mail, and not through e-mail.  *See* Def.'s Opp'n Mem. at

18–19.  The City's request is denied.  "[C]ourts in this Circuit routinely approve email distribution of notice and consent forms in FLSA cases."  *Martin*, No. 15-CV-5237 (PAE), 2016 WL 30334, at *19; *see also, e.g.*, *Vasto v. Credico (USA) LLC*, No. 15-CV-9298 (PAE), 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016) (granting plaintiffs' "request for permission to distribute the notice via email and text message"); *Pippins v. KPMG LLP*, No. 11-CV-377 (CM) (JLC), 2012 WL 19379, at *14 (S.D.N.Y. January 3, 2012) ("[G]iven the reality of communications today . . . the provision of email addresses and email notice in addition to notice by first class mail is entirely appropriate."); *Lujan v. Cabana Mgmt., Inc.*, No. 10-CV-755 (ILG), 2011 WL 3235628, at *3 n.3 (E.D.N.Y. July 27, 2011) ("While plaintiffs' counsel objects to sending the notices via email . . . the Court sees email as a relatively unobtrusive option, one that affords the recipient time to reflect before deciding whether to respond.").  The Court thus authorizes e-mail distribution of the Notice, as well as delivery of the Notice via first-class mail.

### 4.  Opt-in Period

Plaintiffs request that the Court require opt-in plaintiffs to return the consent forms within 90 days.  *See* Pls.' Mot. at 2.  The City proposes an opt-in period of 45 days.  *See* Def.'s Opp'n Mem. at 19.  Courts in the Second Circuit generally provide opt-in periods of 60 days.  *See, e.g.*, *Martin*, No. 15-CV-5237 (PAE), 2016 WL 30334, at *17 ("[T]he Court approves the proposed 60-day opt-in period. . . . . Sixty-day opt-in periods are common in FLSA collective actions."); *Bittencourt*, 310 F.R.D. at 117 ("[T]he plaintiff should be required to amend the notice to provide for opt-in plaintiffs to consent to join the action within 60 days of the date of the notice."); *Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 566–67 (S.D.N.Y. 2015) ("Since courts in this Circuit routinely restrict the opt-in period to sixty days, the opt-in period in this case will be sixty days." (internal quotation marks omitted)); *Dilonez*, 35 F. Supp. 3d at 258 ("[T]he Court

concludes that sixty days is a reasonable length of time for a notification period, and other courts in this district have granted requests for similar periods.").  Here, Plaintiffs have not demonstrated that the standard 60-day period is insufficient to inform potential plaintiffs of the collective action and provide them an opportunity to join.  Nor has the City identified any exceptional circumstances that would justify a shorter opt-in period of 45 days.  Accordingly, the Court concludes that a 60-day opt-in period is appropriate.  Plaintiffs are directed to amend the Notice to provide that opt-in plaintiffs must return the consent form within 60 days.

### 5.  Production of Potential Plaintiffs' Contact Information

Plaintiffs request that the Court order the City to provide the names, last known addresses, and e-mail addresses of all potential collective action members.  *See* Pls.' Mot. at 2.  The City does not appear to object to this request.  Consistent with the decisions of other courts in this District, the Court grants Plaintiffs' request to order the City to provide contact information for potential collective action members.  *See, e.g.*, *In re Deloitte & Touche, LLP Overtime Litig.*, No. 11-CV-2461 (RMB) (THK), 2012 WL 340114, at *1 (S.D.N.Y. Jan. 17, 2012) ("It is now commonplace in this Circuit to require the provision of personal contact information to class counsel for the purposes of notifying a class of a collective action and enabling class counsel to obtain relevant discovery.") (collecting cases)).

### CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' motion for conditional certification of a collective action consisting of all individuals who work or have worked in the positions of Associate Fraud Investigator 1, Fraud Investigator 1, or Fraud Investigator 2 for the City of New York at any of its Human Resources Administration facilities since May 9, 2013.

The City is directed to provide to Plaintiffs' counsel the names, mailing addresses, and e-mail addresses of all putative collective action members within twenty days of this Opinion and Order.

Plaintiffs are directed to provide the City a revised Notice, consistent with this Opinion and Order, within seven days of this Opinion and Order.

Finally, Plaintiffs' counsel shall distribute the Notice to putative collective action members within five days of the Court's approval of the revised Notice.

The Clerk of Court is respectfully directed to remove Violeta Hernandez's name from the caption and to terminate the motion pending at Docket No. 33.

SO ORDERED.

Dated:      June 29, 2017
            New York, New York

_____
Ronnie Abrams
United States District Judge