Index No. 16 CV 3445 (RA) (SDA)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEROME ADAMS, et al.,

Plaintiffs,

-against-

CITY OF NEW YORK,

Defendant.

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

*JAMES E. JOHNSON*
*Corporation Counsel of the City of New York*
*Attorneys for Defendant*
*100 Church Street - Room 2-186*
*New York, NY 10007*

*Of Counsel:  Dominique F. Saint-Fort*
*Tel:  (212) 356-2444*
*Matter No.* 2016-015113

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 4

ARGUMENT ................................................................................................................ 5

      POINT I ............................................................................................................... 5

           SUMMARY JUDGMENT SHOULD BE
           GRANTED IN PART ........................................................................... 5

           A.  Legal Standard .................................................................... 5

           B.  Plaintiffs' "Off The Clock" Claim Fails As A
               Matter Of Law ................................................................... 6

           C.  Plaintiffs' Delayed Payment Claims Fail As a
               Matter of Law .................................................................. 16

           D.  Plaintiffs' Straight Time and Regular Rate
               Claims Fail As a Matter of Law ....................................... 17

           E.  Liquidated Damages Are Not Recoverable
               Because Defendant Acted In Good Faith ......................... 18

           F.  The Statute Of Limitations Should Be
               Restricted To Two Years .................................................. 20

CONCLUSION ........................................................................................................ 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

<u>Affrunti v. Long Island Univ.</u>,
   2005 U.S. App. LEXIS 12372 (2d Cir. June 22, 2005) ...........................................................6

<u>Allen v. City of Chicago</u>,
   2017 U.S. App. LEXIS 14230 (7th Cir. Aug. 3, 2017) .........................................................11

<u>BellSouth Telecomms., Inc., v. W.R. Grace & Co.</u>,
   77 F. 3d 603 (2d Cir. 1996).....................................................................................................6

<u>Bickerstaff v. Vassar Coll.</u>,
   196 F.3d 435 (2d Cir. 1998).....................................................................................................6

<u>Boelk v. AT&T Teleholdings, Inc.</u>,
   2013 U.S. Dist. LEXIS 101111 (W.D. Wis. Jan. 10, 2013) ....................................................8

<u>Bowrin v. Catholic Guardian Soc'y</u>,
   417 F. Supp. 2d 449 (S.D.N.Y. 2006)...............................................................................21, 22

<u>Brennan v. City of Philadelphia</u>,
   2016 U.S. Dist. LEXIS 80299 (E.D. Pa. June 21, 2016) ..................................................16, 17

<u>Brown v. ScriptPro, LLC</u>,
   700 F.3d 1222 (10th Cir. 2012) .............................................................................................10

<u>Caserta v. Home Lines Agency, Inc.</u>,
   273 F.2d 943 (2d Cir. 1959)...................................................................................................12

<u>Celotex Corp. v. Catrett</u>,
   477 U.S. 317 (1986)..............................................................................................................5, 6

<u>Cross v. Ark. Forestry Comm'n</u>,
   938 F.2d 912 (8th Cir. 1991) .................................................................................................19

<u>Edwards v. City of New York</u>,
   2012 U.S. Dist. LEXIS 68055 (S.D.N.Y. May 15, 2012)...........................................13, 14, 15

<u>Fairchild v. All Am. Check Cashing, Inc.</u>,
   815 F.3d 959 (5th Cir. 2016) ...........................................................................................10, 14

<u>Forbes v. Lighthouse Int'l</u>,
   No. 11 CV 7065, 2013 U.S. Dist. LEXIS 62454 (S.D.N.Y. May 1, 2013) ..............................6

**Cases**                                                                                                          **Pages**

Green v. Federal Express Corporation,
    614 Fed. Appx. 905 (9th Cir. 2015) ................................................................14

Grosswiler v. Freudenberg-NOK Sealing Techs.,
    2015 U.S. Dist. LEXIS 109592 (N.D. Ohio Aug. 19, 2015) ..............................9, 11

Herman v. RSR Sec. Servs. Ltd.,
    172 F.3d 132 (2d Cir. 1999).........................................................................18, 20

Hertz v. Woodbury County,
    566 F.3d 775 (8th Cir. 2009) ..............................................................................14

Holzapfel v. Town of Newburgh,
    145 F.3d 516 (2d Cir. 1998)....................................................................7, 12, 13

Inclan v. N.Y. Hosp. Grp., Inc.,
    95 F. Supp. 3d 490 (S.D.N.Y. 2015).................................................................20

Joza v. WW JFK LLC,
    2010 U.S. Dist. LEXIS 94419 (E.D.N.Y. Sept. 9, 2010)...............................10, 16

Kadden v. VisuaLex,
    LLC, 910 F. Supp. 2d 523 (S.D.N.Y. 2012) ......................................................22

Kosakow v. New Rochelle Radiology Assocs., P.C.,
    274 F.3d 706 (2d Cir. 2001).................................................................................7

Kuebel v. Black & Decker Inc.,
    643 F.3d 352 (2d Cir. 2011)................................................................................7

McFeeley v. Jackson St. Entm't, LLC,
    825 F.3d 235 (4th Cir. 2016) ..............................................................................19

McLaughlin v. Richland Shoe Co.,
    486 U.S. 128 (1988)............................................................................................21

Newton v. City of Henderson,
    47 F.3d 746 749-50 (5th Cir. 1995) ...............................................................14, 16

Nieddu v. Lifetime Fitness, Inc.,
    38 F. Supp. 3d 849 (S.D. Tex. 2014) .................................................................11

Padilla v. Sheldon Rabin, M.D., P.C.,
    2016 U.S. Dist. LEXIS 46633 (E.D.N.Y. Apr. 6, 2016) ......................................21

iii

**Cases**                                                                                                          **Pages**

Parada v. Banco Indus. de Venez,
    753 F.3d 62 (2d Cir. 2014)................................................................................21

Perez v. Mountaire Farms,
    650 F.3d 350 (4th Cir. 2011) ..........................................................................19

Reich v. S. New Eng. Telecomms. Corp.,
    121 F.3d 58 (2d Cir. 1997).........................................................................18, 19

Rogers v. City of Troy,
    148 F.3d 52 (2d Cir. 1998).............................................................................16

Seever v. Carrols Corp.,
    528 F. Supp. 2d 159 (W.D.N.Y. 2007) .........................................................10

Valcho v. Dallas County Hosp. Dist.,
    574 F. Supp. 2d 618 (N.D. Tex. 2008) ..........................................................11

White v. Baptist Mem'l Health Care Corp.,
    699 F.3d 869 (6th Cir. 2012) ...................................................................8, 9, 10

Wood v. Mid-Am. Mgmt. Corp.,
    192 Fed. Appx. 378 (6th Cir. Aug. 1, 2006) ................................................10

Wright v. Coughlin,
    132 F.3d 133 (2d Cir. 1998)............................................................................6

**Federal Statutes**

29 U.S.C. § 207(a)(1)..............................................................................................7

29 U.S.C. § 216(b) ................................................................................................18

29 U.S.C. § 255(a) ...........................................................................................20, 21

**Rules**

Fed. R. Civ. P. 56(c) ...........................................................................................2, 5

Federal Rule of Civil Procedure 56 ........................................................................2

**Regulations**

29 C.F.R. § 778.106...............................................................................................16

29 C.F.R. § 785.48(a)...........................................................................................7, 8

## PRELIMINARY STATEMENT

Plaintiffs are 496 current or former Fraud Investigators Level 1 ("F1"), Fraud Investigators Level 2 ("F2"), and Associate Fraud Investigators Level 1 ("AF1") who worked at the City of New York's ("City" or "Defendant") Human Resources Administration ("HRA") for some period of time since May 9, 2013.  Plaintiffs allege that they are entitled to damages under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") because (i) they were not compensated for all time worked ("Off The Clock"); (ii) the City improperly calculated the regular rate of pay ("Regular Rate"); (iii) overtime compensation was not paid to them in a timely manner ("Timeliness"); and (iv) they were improperly paid straight time for compensatory time, instead of at a premium rate ("Straight Time").  Notably, Plaintiffs' Off-the-Clock claim does not stem from the City's failure to pay overtime that was presented to it for payment through the City's web-based timekeeping system ("CityTime"), a step Plaintiffs acknowledge is necessary to generate payment.

On June 29, 2017, the Court granted Plaintiffs' Motion for Conditional Certification of this action as a collective action consisting of individuals who work or have worked in the positions of F1, F2 and AF1 for HRA since May 9, 2013.  See ECF Dkt. No. 50. At the outset of discovery, the Court approved a joint stipulation by which the parties jointly selected 25 randomly selected plaintiffs to serve as "Discovery Plaintiffs" for written, electronic, and deposition discovery, constituting a wide swath of plaintiffs in varying titles and work locations. See ECF Dkt. No. 54. Of these initial 25 Discovery Plaintiffs, 11 Plaintiffs failed to comply with deposition notices, and were replaced with 11 jointly selected second-phase Discovery Plaintiffs. Of the 12 second-phase Discovery Plaintiffs, six failed to comply with deposition notices.  By the close of discovery, Defendant had deposed and received discovery

materials from 23 Discovery Plaintiffs (six F1s, 11 F2s, and six AF1s). On November 2, 2018, following failure to appear for a deposition or otherwise participate in discovery, on consent of the parties, the Court dismissed with prejudice the following Plaintiffs: Lori Cruz, Michael Trano, and Caroline Crawford.  See ECF Dkt. No. 109.

Defendant now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.  First, Defendant is entitled to summary judgment with respect to Count I (Off The Clock) because, as a matter of law, an employer does not suffer or permit work where, as here, the employer (i) establishes procedures for employees to record their time; (ii) asks employees to certify that the time they submit is accurate; and (iii) pays employees for the time reported and certified.  The record evidence in this case shows that Plaintiffs failed to (i) record minutes allegedly worked in excess of their regular schedule as overtime and/or (ii) request overtime compensation for such time, in contradiction to HRA policy and the very certification they signed each week.

Despite these failures, Plaintiffs now seek to hold Defendant liable for overtime they, admittedly, never reported as time worked.  This is not a case wherein the Plaintiffs were unaware of how to submit overtime requests, or were not permitted to submit overtime requests. During the applicable time period, there were 41,302 requests for overtime compensation submitted by Plaintiffs in CityTime.  These 41,302 requests amount to 45,532  hours of overtime work reported to Defendant.  Now, after Defendant has relied on the time records submitted by Plaintiffs to pay them for over 45,000 hours worked, Plaintiffs contend that they were, allegedly, underreporting their hours worked.  This alleged underreporting – and Defendant's reliance on Plaintiffs' time records – should preclude Plaintiffs from recovering damages.  While Defendant recognizes it has a non-delegable duty to maintain accurate time records, Plaintiffs were paid

exactly as they requested and any alleged inaccuracies in Defendant's time records are solely due to Plaintiffs' failure to accurately record the time they worked.

Defendant is entitled to summary judgment on Plaintiffs' Delayed Payment Claims because Plaintiffs have adduced no admissible evidence of any alleged "delayed" payments, and Plaintiffs' own damages calculations list all seven Plaintiffs as having no Delayed Payment damages. In fact, during the relevant time period, and utilizing Plaintiffs' arbitrary 36-day standard, overtime cash payments were received within 36 days of the date they were earned on 94% of occasions by Plaintiffs. Similarly, Defendant is entitled to summary judgment on Plaintiffs' Straight Time Claims because Plaintiffs have adduced no admissible evidence of any miscalculation of their compensatory time calculations.

Defendant is also entitled to summary judgment with respect to Plaintiffs' Regular Rate Claims. Plaintiffs allege that Defendant failed to properly calculate the regular rate at which overtime compensation is paid by not including the night-shift differential or meal allowance payments.  However, Defendant properly included differentials earned by Plaintiffs in the calculation of their regular rate of pay.

Defendant is entitled to summary judgment on their argument that liquidated damages are not recoverable as a matter of law because the record evidence shows that Defendant acted in good faith to comply with the FLSA. Further, Defendant's motion that the statute of limitations should be restricted to two years because the Plaintiffs cannot establish that Defendant's conduct was willful should also be granted.

Given that Plaintiffs have not adduced any admissible evidence in connection with these claims, Defendant respectfully submit that the Court should dismiss these claims with

prejudice and find that Plaintiffs are not entitled to liquidated damages or a three-year statute of limitations.

## STATEMENT OF FACTS

The material, undisputed facts of this case are recited in detail in the accompanying Local Rule 56.1 Statement of Undisputed Material Facts ("Def's 56.1"). For the Court's convenience, a brief summary of facts relating to the instant motion is set forth below.

CityTime is a web-based software tool that City employees use to manage their time and attendance and electronically submit their timesheets and overtime requests for approval. See Def's 56.1 ¶¶ 15, 23. Plaintiffs record their arrival and departure times at their worksites in CityTime by either using a hand scanner, known as a DCD device, or Web Clock, which is a program on their computer located at their workstation. See id. ¶¶ 19, 20.

Plaintiffs submit requests in the CityTime program for compensation when they work beyond their regularly scheduled shifts.   See id. ¶ 23. Plaintiffs are responsible for submitting overtime requests for any time worked outside of their normal schedule.  See id. ¶ 28. In order for Plaintiffs to be compensated for time worked outside of their regular shift, whether that work was performed before or after their regularly scheduled shift or during the meal period, Plaintiffs must submit an overtime request in CityTime.  See id. ¶¶ 28, 36.  Indeed, the discovery Plaintiffs universally testified they understood that in order to be paid for overtime worked beyond their regular shift they were required to submit an overtime request in CityTime.  See id. ¶ 68.

The CityTime sign-in page reminds employees to perform work only during their scheduled hours unless directed otherwise. See id. ¶ 41.  CityTime also directs employees to ensure all hours worked are properly and accurately recorded so that the employee may be paid for all hours worked.  See id. ¶ 39.  Each week employees certify by electronic signature that

4

they have reviewed the hours they recorded and submitted and that the hours are correct. See id. ¶ 44.  The employees must also verify that if there is any time recorded in CityTime before or after their scheduled shift, or during the lunch break, for which they did not seek overtime, the time was not time spent working.  See id.  The CityTime system records the time employees are present at the worksite outside of their regularly scheduled shift, but do not request overtime compensation for, as "noncompensable" time. See id. ¶ 89.

Notably, Plaintiffs routinely requested and received overtime compensation for work performed outside of their regular shifts.  See id. ¶¶ 68, 69, 76, 80.  Plaintiffs were paid $1,287,668 in overtime compensation and received compensatory time in the amount of 45,532 hours between May 9, 2013 and November 24, 2018.  See id. ¶¶ 76, 77.  These amounts, both in cash and compensatory time, were the result of 41,302 separate instances of overtime payments. See id. ¶ 78.  From May 9, 2013 and November 24, 2018, 97% of Plaintiffs' overtime requests were approved. See id. ¶ 80. Of the 41,302 separate instances in which Plaintiffs received overtime compensation, 3,669 of these instances were for periods of work amounting to 30 minutes or less. See id. ¶ 79.

## ARGUMENT

### POINT I

### SUMMARY JUDGMENT SHOULD BE GRANTED IN PART

#### A.    Legal Standard

A motion for summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317,

322 (1986).  The moving party should prevail where it points to an absence of evidence on an issue on which the non-movant bears the burden of proof.  See Celotex, 477 U.S. at 322. Although the moving party bears the initial burden to show that there is no genuine issue of material fact, the non-moving party cannot rely in opposition on conclusory allegations or speculation and must set forth specific facts, based on admissible evidence, showing that there is a genuine issue of fact.  See Wright v. Coughlin, 132 F.3d 133, 137 (2d Cir. 1998); see also Bickerstaff v. Vassar Coll., 196 F.3d 435, 452 (2d Cir. 1998) ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment."); BellSouth Telecomms., Inc., v. W.R. Grace & Co., 77 F. 3d 603, 615 (2d Cir. 1996) (it is insufficient to "merely to assert a conclusion without supplying supporting arguments or facts").

Moreover, not every disputed issue is material.  See Affrunti v. Long Island Univ., No. 04 CV 2710, 2005 U.S. App. LEXIS 12372, at *3 (2d Cir. June 22, 2005) (explaining that a fact is "material" if it affects the outcome of the suit and an issue is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party) (internal citations omitted); Forbes v. Lighthouse Int'l, No. 11 CV 7065, 2013 U.S. Dist. LEXIS 62454, at *13 (S.D.N.Y. May 1, 2013) ("The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him.") (citing Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004)).

## B.  Plaintiffs' "Off The Clock" Claim Fails As A Matter Of Law

As set forth below, Defendant is entitled to summary judgment with respect to Count I as a matter of law because it is undisputed that the allegedly uncompensated work time

at issue in this case was not reported to the City through its timekeeping system, and the City therefore did not have the requisite knowledge to establish liability.

> **1. Knowledge Of The Performance Of Uncompensated Work Is A Prerequisite To A Finding Of Liability For An Off The Clock Claim**

The FLSA requires that employers compensate non-exempt employees with premium overtime pay for any hours worked over 40 in a workweek.  See 29 U.S.C. § 207(a)(1). However, in order to be found liable for unpaid overtime, the employer must have knowledge that the work was performed. See Kuebel v. Black & Decker Inc., 643 F.3d 352, 361 (2d Cir. 2011) ("To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he or she performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work."); Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 718 (2d Cir. 2001) ("an employee must be compensated for time she works outside of her scheduled shift, even if the employer did not ask that the employee work during that time, so long as the employer 'knows or has reason to believe that the employee is continuing to work and that work' was 'suffered or permitted' by the employer") (quoting 29 C.F.R. § 785.11).  Indeed, it is common sense that "[a]n employer cannot suffer or permit an employee to perform services about which the employer knows nothing."   See Holzapfel v. Town of Newburgh, 145 F.3d 516, 524 (2d Cir. 1998).

Notably, when time clocks or a time recording system is used, employees who voluntarily come in before the start of their shift or remain at work after their shift ends, do not have to be paid for such time periods unless they are engaged in work that the employer knew or should have known the employee was performing.  See 29 C.F.R. § 785.48(a).  An employer is permitted to disregard an early or late clock punching, where the employer is not made aware

that an employee was actually working.  See id.  Moreover, the recording of such time in a time keeping system is not unlawful.  See id.

This is critical in this case.  Plaintiffs contend that Defendant had actual or constructive of their alleged uncompensated work, in part, because Plaintiffs' supervisors could view their clock in and out times in CityTime and that this is evidence that Plaintiffs were working.  Not so.  The FLSA explicitly permits employers to maintain a timekeeping system that records time not worked.  As such, the fact that CityTime reflects time when Plaintiffs are physically present at work but not working is of no issue to Plaintiffs' claims.

Importantly, an employer may be aware that an employee performed work outside of his normal shift without knowing that the employee performed *uncompensated* work. See White v. Baptist Mem'l Health Care Corp., 699 F.3d 869, 875 (6th Cir. 2012) ("[T]he relevant knowledge is not 'I know that the employee was working,' but "I know that the employee was working and not reporting his time.'") (quoting Raczkowski v. TC Const. Co., Inc., 8 F.3d 29 (9th Cir. 1993)); Boelk v. AT&T Teleholdings, Inc., 2013 U.S. Dist. LEXIS 101111, *17 (W.D. Wis. Jan. 10, 2013) (Plaintiffs' statement that employees "were working through their lunches and breaks" does not establish that supervisor knew employees were working without pay) (citing Kellar v. Summit Seating, Inc., 664 F.3d 169, 177 (7th Cir. 2011) (affirming summary judgment for employer where it knew plaintiff punched in early but not that plaintiff was performing work between the time she punched in and the scheduled start of her shift)).

This case law is, again, critical.  Knowledge that an employee is working is not enough to establish liability under the FLSA.  Liability requires that the employer have knowledge that the employee is working and is also not being paid for such work.  There is absolutely no evidence in the record to demonstrate that Defendant knew Plaintiffs were working

in excess of their shifts and not submitting overtime requests to paid for such time in CityTime. Indeed, during the time period covering this lawsuit, Plaintiffs requested to be paid for more than 45,000 hours of overtime.   There is simply no evidence in the record that Defendant knew Plaintiffs were working in excess of these 45, 532 hours and failing to request to be paid for such time.

> **2.   As A Matter Of Law, An Employer Does Not Have Actual Or Constructive Knowledge Of Time Spent Working That Was Not Reported Pursuant To Its Procedures**

Here, Plaintiffs' Off The Clock Claim is premised on the idea that they can thwart the City's efforts to comply with the FLSA by not giving notice that they performed uncompensated work outside of their regularly-scheduled shift.  But "[w]hen an employer has an established policy for tracking overtime, 'an employer is not liable for nonpayment if the employee fails to follow the established process.'" Grosswiler v. Freudenberg-NOK Sealing Techs., 2015 U.S. Dist. LEXIS 109592, at *11 (N.D. Ohio Aug. 19, 2015), aff'd, 642 Fed. Appx. 596 (6th Cir. Mar. 2, 2016) (quoting White v. Baptist Memorial Health Care Corp., 699 F.3d 869, 877 (6th Cir. 2012)).   As the Sixth Circuit Court of Appeals explained, "[w]hen the employee fails to follow reasonable time reporting procedures, she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA."  White, 699 F.3d at 877 (citing Hertz v. Woodbury County, 566 F.3d 775, 781-82 (8th Cir. 2009); Newton v. City of Henderson, 47 F.3d 746 749-50 (5th Cir. 1995); Forrester v. Roth's I.G.A. Foodliner, Inc., 646 F.2d 413, 414-15 (9th Cir. 1981)).

In so holding, the Sixth Circuit embraced a practical, common sense approach that recognizes that where an employee fails to comply with the employer's efforts to ensure that employees are recording time accurately, the employer cannot be found to have "suffered or permitted" the employee to work:

> At the end of the day, an employee must show that the employer knew or should have known that he was working overtime or, better yet, he should report the overtime hours himself.  Either way, the employee bears some responsibility for the proper implementation of the FLSA's overtime provisions.  An employer cannot satisfy an obligation that it has no reason to think exists. And an employee cannot undermine his employer's efforts to comply with the FLSA by consciously omitting overtime hours for which he knew he could be paid.

See White, 699 F.3d at 875-76 (quoting Forrester, 646 F.2d at 414-15 and Wood v. Mid-Am. Mgmt. Corp., 192 Fed. Appx. 378, 381 (6th Cir. Aug. 1, 2006)).

The Sixth Circuit is not alone in holding that employees must comply with an employer's procedures for reporting time, and has been joined by circuit and district courts across the country in denying recovery where an employee fails to identify time worked using a timekeeping system specifically established by the employer for that purpose.  See e.g. Fairchild v. All Am. Check Cashing, Inc., 815 F.3d 959, 965 (5th Cir. 2016) (affirming judgment for employer where employee failed to report her unauthorized overtime in the employer's timekeeping system); Brown v. ScriptPro, LLC, 700 F.3d 1222, 1230-31 (10th Cir. 2012) ("where the employee fails to notify the employer through the established overtime record-keeping system, the failure to pay overtime is not an FLSA violation"); White, 699 F.3d at 877 (affirming summary judgment to employer where the employee was aware of her employer's system for reporting work that fell outside of her normal shift but failed to report such work); Wood, 192 Fed. Appx. at 380-81 (affirming summary judgment for employer where employee failed to report off-the-clock hours using employer's reporting system); Joza v. WW JFK LLC, 2010 U.S. Dist. LEXIS 94419, at *33-34 (E.D.N.Y. Sept. 9, 2010) (holding that the employer was unaware of any overtime hours allegedly worked by the employee due to the employee's failure to comply with the employer's overtime reporting and compensation procedures); Seever v. Carrols Corp., 528 F. Supp. 2d 159, 170 (W.D.N.Y. 2007) (granting summary judgment on the

plaintiffs' off-the-clock claims where "it [wa]s undisputed that [the employer's] record-keeping complied with the requirements of the FLSA and New York Labor Law, and that the plaintiffs' time records were maintained and paid exactly as plaintiffs fashioned them, meaning that any inaccuracies in [the employer's] records [we]re *solely due to the plaintiffs' deliberate failure to accurately report the time they worked*.") (emphasis in original).[1]  Indeed, the Fifth, Sixth, Seventh, Ninth, and Tenth Circuits all hold that an employer does not have actual or constructive knowledge that uncompensated work was being performed and not recorded because the employees did not report the time, despite the employer's policies permitting them to do so.  See Allen v. City of Chicago, No. 16-1029, 2017 U.S. App. LEXIS 14230 (7th Cir. Aug. 3, 2017) aff'g Allen v. City of Chicago, No. C. 3183, 2015 U.S. Dist. LEXIS 165906 (N.D. Ill. Dec. 10, 2015).

While the Second Circuit has not yet taken up this issue, Defendant respectfully submits that this Court should follow the holding of the majority of Circuits, and the Eastern and Western Districts of New York, which hold that where an employee fails to comply with the employer's efforts to ensure that employees are recording time accurately, the employer cannot be found to have "suffered or permitted" the employee to work.  This common-sense approach to the FLSA takes in to account the realities of modern workplaces.  Many employees can now perform their work functions from their assigned worksite, their home computers, their cell phones or any combination thereof.  As workplaces become more and more decentralized, it is

_____

[1] See also Grosswiler, 2015 U.S. Dist. LEXIS 109592, at *11-12 (awarding summary judgment to employer and dismissing the employees' uncompensated overtime claim where the employees failed to comply with the employer's policy for tracking overtime); Nieddu v. Lifetime Fitness, Inc., 38 F. Supp. 3d 849, 869-870 (S.D. Tex. 2014) (awarding summary judgment to employer on employee's claim for uncompensated overtime where the employee failed to follow the employer's established procedures for claiming overtime compensation); Valcho v. Dallas County Hosp. Dist., 574 F. Supp. 2d 618, 623 (N.D. Tex. 2008) (hospital's policy of placing on its employees the responsibility of reporting the time that they worked was "legally sound.") (citing Wood, 192 Fed. Appx. at 380-81 (dismissing FLSA claim involving employer who required employees to self-report overtime hours, and explaining that the employee "should [have] report[ed] the overtime hours himself")).

imperative that employers be able to rely on the time records created and submitted by employees without running afoul of the FLSA.

        The seminal Second Circuit case on an employer's duty to keep accurate time records is the 1959 decision in Caserta v. Home Lines Agency, Inc., 273 F.2d 943 (2d Cir. 1959). In that case, the employer wholly delegated timekeeping responsibilities to the plaintiff and kept absolutely no independent record of the plaintiff's time.  Caserta, 273 F.2d at 945.  That is not the case here as the City has developed and implemented an electronic system to maintain time records.  Moreover, the FLSA itself contemplates that employees may delegate at least some timekeeping responsibilities to employees in that it allows for employers to utilize time clocks. Therefore, it is permissible for employers to delegate to employees the ability to create a record of the time they clocked in and out of work.

        Somewhat more recently, the Second Circuit held that an employer "cannot deny compensation even where the employee fails to claim overtime hours." Holzapfel, 145 F.3d at 524.  However, the facts in Holzapfel are critically different from those in this case.   In Holzapfel, the plaintiff, a K-9 Police Officer for the Town of Newburgh, was seeking overtime compensation for time he spent caring for his assigned police dog while at home.  Id.  It was the policy of the Town of Newburgh to **only** pay K-9 officers for two overtime hours each week.  Id. Per this policy the plaintiff filled out his weekly overtime request in advance rather than submitting his actual overtime hours as they occurred.  Id. at 520.  As such, in Holzapfel the employer allowed employees to only request payment for two hours overtime per week regardless of how many overtime hours they actually worked.  For that reason, the Court held that the Town of Newburgh could not escape liability by arguing that the plaintiff failed to claim

overtime hours when that failure was due to the Town's own policy restricting overtime to two hours per week.

In contrast, here, Plaintiffs requested overtime contemporaneously, or shortly after, it was worked and there is certainly no pre-determined limit on the number of overtime hours for which they can submit payment.  In fact, it is undisputed Plaintiffs are explicitly and repeatedly instructed to record and request overtime for all hours worked in excess of their shift. See Def's 56.1, ¶¶ 37, 41, 44, 50, 68, 69, 80.  Despite those undisputed facts, Plaintiffs now want to be paid for time they supposedly worked but did not report to Defendant.  This is Plaintiffs' position even for days on which they actually did submit an overtime request.  By way of example, if a Plaintiff clocked out 30 minutes after their shift ended but only requested 15 minutes of overtime pay, CityTime would: (1) process payment for the 15 minutes of overtime requested; and (2) reflect 15 minutes of "noncompensable time."  In this scenario, Plaintiffs claim that, under Holzapfel, this Plaintiff is entitled to 15 minutes of additional pay despite the fact that she only requested 15 minutes of overtime.  However, the factual underpinnings here are so dramatically different from those in Holzapfel that Plaintiffs should not be permitted to extend it's holding to this case.

Judge Cote's decision in Edwards v. City of New York is instructive as it involves the exact same timekeeping system at issue here, CityTime.  See Edwards v. City of New York, No. 08 CV 3134 (DLC), 2012 U.S. Dist. LEXIS 68055, *10-11 (S.D.N.Y. May 15, 2012).  In that case, plaintiffs, who worked as correction officers, argued that they were denied compensation for overtime worked, but which did they did not report on their overtime slips.  In granting summary judgment to the City, Judge Cote held:

> The plaintiffs have failed to produce any admissible evidence that the defendant had actual or constructive knowledge of

> uncompensated overtime work.  The plaintiffs were familiar with
> and utilized the defendant's system for tracking and compensating
> overtime; indeed, every deposed plaintiff testified that he or she
> had submitted overtime slips and received overtime compensation.
> The majority of deposed plaintiffs each received thousands of
> dollars in overtime during the limitations period. Some plaintiffs
> may on occasion have chosen not to submit overtime slips for
> minutes of overtime worked that did not exceed a certain arbitrary
> time threshold.  That fact, however, is insufficient to impute
> knowledge to the defendant that the plaintiffs were performing
> uncompensated overtime work.

Edwards, 2012 U.S. Dist. LEXIS 68055, at *10-11.

Here, as in Edwards, it is undisputed that Plaintiffs were familiar with the CityTime system, they knew how to submit overtime requests and, in fact, did so on tens of thousands of occasions.  Under Plaintiffs' theory of recovery, it was Defendant's obligation to investigate whether this Plaintiff was working during those 15 minutes of overtime that she did not claim as time worked.  Scaling this theory to the hundreds of thousands of City employees that utilize CityTime 365 days a year is simply untenable.  The law does not require an employer does not have to open an investigation into every timecard submitted by an employee to verify the information the employee records (and certifies) is accurate, and an employee cannot rest his claim on what the employer *could have done* to make sure the employee was accurately reporting his time.  See Newton, 47 F.3d at 749 ("[i]f we were to hold that the City had constructive knowledge that Newton was working overtime because [his supervisor] had the ability to investigate whether or not Newton was truthfully filling out the City's payroll forms, we would essentially be stating that the City did not have the right to require an employee to adhere to its procedures for claiming overtime.").[2]

---

[2] See also Fairchild, 815 F.3d at 965 (computer usage reports were insufficient by themselves to put an employer on constructive notice that an employee was working off the clock); Green v. Federal Express Corporation, 614 Fed. Appx. 905, 908 (9th Cir. 2015) (electronic records reflecting scans of packages were not sufficient to put employer

### 3. Plaintiffs Failed To Provide The City With The Required Notice That They Performed Uncompensated Work

Here, certain Plaintiffs seek overtime compensation for certain time outside of their regular shifts: (i) the time between when they clocked in and their shift started: (ii), the time during their thirty minute lunch break; and (iii) the time between the end of their shift and when they clocked out. But the following facts are not in dispute:

- Employees are paid on a "pay to schedule" system, whereby the default is that they are paid according to their regular shifts. Def's 56.1 ¶ 18.

- If employees work hours other than their regular shifts, they must submit requests for compensation in CityTime.  See id. ¶¶  23, 28, 36.

- Plaintiffs now seek overtime compensation for time outside of their regular shifts: (i) the time between when they clocked in and their shift started: (ii), the time during their one-hour lunch break; and (iii) the time between the end of their shift and when they clocked out. See Second Amended Complaint, Ex. A, ¶¶ 22-45.

- Plaintiffs knew that they had to request compensation for such work through CityTime in order to receive compensation for that time. See Def's 56.1  ¶ 37.

- Plaintiffs routinely utilized CityTime to submit requests for overtime compensation. See Def's 56.1 ¶¶ 78, 79. In fact, 97% of overtime requests submitted by Plaintiffs through CityTime between May 9, 2013 and November 24, 2018, were approved. See id. ¶  80.

- Many Plaintiffs were supervised by other Plaintiffs who reviewed their timesheets and overtime requests, and thus knew the proper procedure to receive payment for overtime worked.  See id.  ¶  70.

Thus, as indicated above, the only unpaid overtime compensation at issue in this case is that which Plaintiffs admittedly did not accurately report to the City, despite the fact that they knew how to, and did, submit requests for overtime compensation in CityTime. As in Edwards, Plaintiffs were clearly familiar with the procedure required for requesting overtime compensation, and did not do so.  See 2012 U.S. Dist. LEXIS 68055, at *10-11.

---

on constructive notice of off-the-clock work); Hertz, 566 F.3d at 781-82, 784 (employer was not required to review its electronic data for payroll purposes to determine whether employees were remotely working off the clock).

Allowing Plaintiffs' claim to proceed would drastically expand the scope of liability under the FLSA beyond anything contemplated by Congress or permitted under Supreme Court precedent, and render implausible any attempt by the City to meet its obligations under the FLSA by asking its more than 200,000 employees to adhere to a procedure for reporting overtime in order to receive compensation. See Newton, 47 F.3d at 749. Because the Plaintiffs failed to accurately record all of their time in CityTime, and affirmatively misrepresented that they had done so, the City is entitled to summary judgment, and Count I should be dismissed. See Joza, 2010 U.S. Dist. LEXIS 94419, at *34 ("Other than overtime compensation that might have been due her for overtime work she deliberately chose not to report, Joza was paid every penny of overtime she chose to report and process. Consequently, judgment must be for defendants on all of plaintiff's claims.").

**C.      Plaintiffs' Delayed Payment Claims Fail As a Matter of Law**

The FLSA requires that payment of overtime compensation "may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made." 29 C.F.R. § 778.106.  Thus, while the FLSA has been interpreted to require "prompt payment," there is no *per se* rule as to when payment must be made in relation to when it is earned. See Rogers v. City of Troy, 148 F.3d 52, 55-57 (2d Cir. 1998); see also Brennan v. City of Philadelphia, 2016 U.S. Dist. LEXIS 80299, at *4-6 (E.D. Pa. June 21, 2016).  Contrary to the Second Amended Complaint's claim that any overtime paid more than the next  pay period after it is worked is considered late *per se*, courts have not set any bright line rule defining what a reasonable delay in payment of overtime equates to in practice. Brennan, 2016 U.S. Dist. LEXIS 80299, at *4–6. In Brennan, the Court acknowledged that the DOL interpretation "allows that, '[w]hen the correct amount of overtime compensation cannot be

determined until sometime after the regular pay period,' an employer can pay 'the excess overtime compensation as soon after the regular pay period as is practicable.'" Id. The court further noted that "[a]s long as the overtime is paid as soon after the initial pay period as practicable, 'the requirements of the Act will be satisfied.'" Id. (citing 29 C.F.R. § 778.106).

Plaintiffs have adduced no admissible evidence of any alleged "delayed" payments. In fact, during the relevant time period, and utilizing Plaintiffs' arbitrary 36-day standard and damage calculations, 94% of cash payments to Plaintiffs were received within 36 days of the date they were earned. See Erath Decl, Ex. UU, ¶ 10(G);  Def. 56.1 at ¶¶ 81. Specifically, 412 Plaintiffs out of the class did not experience any delay in receiving overtime payments.  See Erath Decl, Ex. UU, ¶ 10(M);  Def. 56.1 at ¶ 83.  Thus, the Court should dismiss Plaintiffs' Delayed Payment claims, to the extent they are alleged, in their entirety.

**D.      Plaintiffs' Straight Time and Regular Rate Claims Fail As a Matter of Law**

Plaintiffs have adduced no admissible evidence of any miscalculation of their compensatory time calculations. During the relevant time period, Plaintiffs received 45,532 hours in compensatory time.  See Erath Decl., Ex. UU, ¶ 10(C).  None of the Plaintiffs have alleged that they did not receive the appropriate rate for their compensatory time, and none of them have submitted any evidence that their compensatory time was miscalculated. Accordingly, Plaintiffs' Straight Time Claims should be dismissed.

With regard to the Regular Rate Claims, Plaintiffs allege that Defendant failed to properly calculate the regular rate at which overtime compensation is paid by not including the night-shift differential or meal allowance payments. However, 285 Plaintiffs in the class were never eligible for payment of a nightshift differential in their regular rate of pay. See Erath Decl., Ex. UU, ¶ 10(I); Def. 56.1 at ¶ 82.  The remaining Plaintiffs received $23,360 in combined night-shift differential payments during the relevant period, and CityTime includes the nightshift

differential in an employees' regular rate of pay for purposes of calculating overtime compensation. See Erath Decl., Ex. UU, ¶ 10(H).  Accordingly, Plaintiffs' Regular Rate Claims should be dismissed

**E.      Liquidated Damages Are Not Recoverable Because Defendant Acted In Good Faith**

If a plaintiff successfully establishes a violation of the FLSA, liquidated damages in an amount equal to the amount of unpaid wages at issue are imposed, *unless* the employer establishes it acted in good faith. See 29 U.S.C. § 216(b).  To establish that an employer acted with the requisite subjective good faith, the employer must show that it took "active steps to ascertain the dictates of the FLSA and then act[ed] to comply with them." Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999); see also Reich v. S. New Eng. Telecomms. Corp., 121 F.3d 58, 71 (2d Cir. 1997) ("'Good faith' in this context requires more than ignorance of the prevailing law or uncertainty about its development. It requires that an employer first take active steps to ascertain the dictates of the FLSA and then move to comply with them."). Here, Plaintiffs should not be awarded liquidated damages because, for the reasons set forth above, they have not met their burden of establishing a violation of the FLSA with respect to Counts I and II. However, even if this Court finds a question of fact exists sufficient to deny partial summary judgment, the undisputed material facts show Defendant took active steps to ascertain and comply with the FLSA's requirements, thereby precluding an award of liquidated damages on any claim.

**1.  The City Demonstrated Subjective Good Faith**

In developing CityTime, the City took steps to ensure that it would enable the City's FLSA compliance, including by:

- Providing CityTime training, including self-paced online training, to all employees to ensure that they understood how to make an overtime request

and that they were responsible for making all overtime requests in CityTime. See Def's 56.1 ¶¶ 65, 67;

- Upon advice of counsel, adding a certification to Plaintiffs' weekly timesheets, which was drafted by the City's chief labor and employment law counsel, requiring all employees to certify that the hours recorded on their timesheets are accurate and that they requested overtime for any hours worked outside of their regular schedule. See id. ¶¶ 48, 88;

- Convening weekly meetings, composed of high-ranking members of OPA, OLR, and the Law Department, to ensure that CityTime is programmed in such a way that it complies with the FLSA. See id. ¶¶ 84, 85; and

- Relying upon the advice of counsel to determine how to calculate the rate at which overtime is paid when employees receive differentials in addition to their salaries. See id. ¶ 87.

Thus, the record evidence establishes that the City demonstrated subjective good faith in complying with the FLSA, through its reliance on the advice of counsel and internal personnel and labor relations experts in programming CityTime, inclusion of certification language, and training employees on CityTime. See McFeeley v. Jackson St. Entm't, LLC, 825 F.3d 235, 245 (4th Cir. 2016) (finding that the employer's consultation with an attorney regarding the employer's compliance under the FLSA, and the employer's subsequent reliance on the attorney's advice, constituted sufficient evidence of good faith to preclude an award of liquidated damages for the time period after the employer's meeting with the attorney); Perez v. Mountaire Farms, 650 F.3d 350, 375-76 (4th Cir. 2011) (affirming lower court's refusal to award liquidated damages because the employer relied on letters and memoranda provided by an outside attorney in implementing the practices that gave rise to the liability under the FLSA); Cross v. Ark. Forestry Comm'n, 938 F.2d 912, 917-18 (8th Cir. 1991) (finding that the employer's reliance on the incorrect advice provided by internal personnel experts established that the employer engaged in a subjective good faith effort to comply with the FLSA; contra Reich, 121 F.3d at 72 (noting the evidentiary record did not support a finding of good faith

because "nowhere in [the employer's] briefs does [the employer] contend that it was relying on the advice of informed counsel."); Inclan v. N.Y. Hosp. Grp., Inc., 95 F. Supp. 3d 490, 504 (S.D.N.Y. 2015) (holding that the evidence of the employer's good faith was insufficient because "the record contains no evidence as to the advice of prior counsel nor of whether [the employer] followed that advice.").

### 2.   Defendant's Conduct Was Objectively Reasonable

The undisputed evidence also establishes that City's belief that it was in full compliance with the FLSA was objectively reasonable. While Plaintiffs contend that they were not paid all of the overtime they were allegedly entitled to, there is no dispute that when Plaintiffs requested overtime through CityTime was paid overtime during the relevant period. See Def's 56.1 ¶ 80.  Indeed the evidence demonstrates that 97% of the overtime requests made by Plaintiffs during the limitations period were approved. See id. Further, because CityTime requires Plaintiffs to manually request overtime each time they work outside of their regular shift, it is undisputed that Plaintiffs understood how to make an overtime request in the CityTime system. Id. ¶ 69. It is likewise undisputed that each Plaintiff certifies on a weekly basis that he or she has requested overtime for all hours worked. Id. ¶ 44.

Therefore, even if the Court declines to dismiss any of Plaintiffs' claims, the City is nevertheless entitled to summary judgment on its good faith defense, precluding an award of liquidated damages, because the evidence establishes that it engaged in subjective good faith efforts to comply with the FLSA, and that those were objectively reasonable.

### F.      The Statute Of Limitations Should Be Restricted To Two Years

The FLSA provides for a two-year limitations period that may be extended for one year only where the violation was willful. 29 U.S.C. § 255(a); Herman, 172 F.3d at 141. That the violation was not willful is not an affirmative defense, and it is, therefore, a plaintiff's

burden to prove that the limitations period should be extended. See Parada v. Banco Indus. de Venez, 753 F.3d 62, 71 (2d Cir. 2014).

"[T]o prove a willful violation of the FLSA within the meaning of § 255(a), it must be established that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." Parada, 753 F.3d at, 71 (quoting Reich v. Waldbaum, Inc., 52 F.3d 35, 39 (2d Cir. 1995)). Even "[i]f an employer acts unreasonably, but not recklessly, in determining its legal obligation, its action should not be considered willful." See id.; see also Padilla v. Sheldon Rabin, M.D., P.C., No. 15 CV 1708, 2016 U.S. Dist. LEXIS 46633, *18-19 (E.D.N.Y. Apr. 6, 2016) ("[N]either an employer's good-faith but incorrect assumption regarding its FLSA obligations, nor an employer's lack of reasonable basis for believing that it was complying with the FLSA, is by itself sufficient to demonstrate an employer's willfulness.") (internal citation omitted).   Stated differently, an employer's negligence with respect to compliance is not enough to establish willfulness and a plaintiff must present evidence establishing that the employer affirmatively knew it was violating the FLSA. See McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988); see Bowrin v. Catholic Guardian Soc'y, 417 F. Supp. 2d 449, 475 (S.D.N.Y. 2006).  Plaintiffs cannot meet that burden here, and Defendant is entitled to the statutory two-year limitations period as a matter of law.

As addressed in Section E above, the same evidence that establishes Defendant's good faith efforts to comply with the FLSA precludes a finding that any alleged violations were willful.  There is nothing in the factual record showing that Defendant acted in reckless disregard of the law.  To the contrary, Defendant took, and continues to take, substantial measures to ensure that it was and is fully compliant with the FLSA. These measures include (i) requiring all employees to certify the accuracy of their weekly timesheets and that they have requested

21

overtime compensation for all time worked in excess of their regular schedule; (ii) training employees on the CityTime system, including how to submit requests for overtime and certify the accuracy of timesheets; (iii) approving overtime regularly for all employees, including when it was not pre-authorized as required under City policy; and (iv) consulting extensively with counsel and informed personnel experts to ensure that City employees, including Plaintiffs, are paid in accordance with FLSA.  <u>See</u> Def's 56.1 ¶¶ 44, 84-91.

Therefore, even if this Court does not grant summary judgment as set forth above, the Court should grant summary judgment as to the applicable limitations period, dismissing any claims predating two years from the filing of any respective Plaintiff's consent to sue. <u>See</u> <u>Kadden v. VisuaLex</u>, LLC, 910 F. Supp. 2d 523, 543 (S.D.N.Y. 2012) (holding that a two year limitations period was automatic given finding that the employer acted in good faith); <u>Bowrin</u>, 417 F. Supp. 2d at 475 (granting motion for summary judgment that a two year limitations period should apply because "Plaintiffs have not presented evidence that [the employer] knew it was violating the FLSA"); <u>DeBejian v. Atlantic Testing Lab.</u>, Ltd., 64 F. Supp. 2d 85, 93 (N.D.N.Y 1999) (applying a two year limitations period because "[a]lthough . . . [the employer] did not take sufficient steps to ensure compliance with the FLSA, [it] did make an effort to ascertain whether its policies were in compliance and, therefore, it cannot be said that [the employer] recklessly disregarded whether its conduct violated the FLSA").

## CONCLUSION

**WHEREFORE**, Defendant respectfully requests that this Court dismiss Plaintiffs' complaints in their entirety because they have not adduced evidence demonstrating that Defendant violated the FLSA; in the alternative, grant Defendant's motion for summary judgment on its good faith defense, precluding an award of liquidated damages; in the alternative, grant Defendant's motion for summary judgment and limit all Plaintiffs' claims to the statutory two-year limitations period; and awarding Defendant such other and further relief as the Court deems just and proper.

Dated:        New York, New York
              June 15, 2020

                        **JAMES E. JOHNSON**
                        Corporation Counsel of the
                          City of New York
                        Attorney for Defendant
                        100 Church Street, Rom 2-186
                        New York, New York 10007
                        (212) 356-2444
                        dosaint@law.nyc.gov


              By:      */s/ Dominique F. Saint-Fort*
                        Dominique F. Saint-Fort
                        Assistant Corporation Counsel