UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<div style="border:1px solid">

**USDC-SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC#:**
**DATE FILED:** 05/05/2021

</div>

JEROME ADAMS, *et al.*,

                    Plaintiffs,

        v.

CITY OF NEW YORK,

                    Defendant.

No. 16-CV-3445 (RA)

<u>OPINION & ORDER</u>

RONNIE ABRAMS, United States District Judge:

Plaintiffs, current or former Fraud Investigators and Associate Fraud Investigators for New York City's Human Resources Administration, bring this suit against the City of New York ("the City") for violations of the Fair Labor Standards Act's ("FLSA") overtime provisions. They allege that the City (1) failed to pay them overtime for time they worked outside of their normal work schedules (the "off-the-clock" claim); (2) improperly calculated their regular rate of pay, and therefore improperly calculated the amount they were owed for overtime pay, which must be paid at a rate of one and a half times the regular rate of pay (the "regular rate" claim); (3) improperly compensated Plaintiffs for overtime at the straight-time rate (the "straight time" claim); and (4) did not pay out overtime payments in a reasonably prompt manner (the "delayed payment" claim). *See* Dkt. 42 (Second Amended Complaint). Before the Court are the parties' cross-motions for summary judgment. *See* Dkts. 153, 157. For the reasons that follow, both motions are denied.

## BACKGROUND

### I.    Factual Background

The following facts are drawn from the parties' Local Civil Rule 56.1 statements and are undisputed unless otherwise noted. The Court discusses the relevant facts in greater detail in the

applicable sections of this opinion below.

Plaintiffs are current and former employees of the City of New York's Human Resources Administration (HRA), who work or worked as fraud investigators. *See* Dkt. 154, Defendant's Rule 56.1 Statement ("Def. 56.1"), ¶¶ 1-2. Fraud investigators investigate acts of misconduct or criminality relating to the improper application, receipt, dissemination, or appropriation of public funds, particularly involving the abuse of social benefits. *See* Dkt. 159, Plaintiff's Rule 56.1 Statement ("Pl. 56.1"), ¶ 5. Plaintiffs are generally scheduled to work eight-hour shifts, including a one-hour unpaid meal period, from Monday through Friday. *See* Dkt. 162, Def. Response to Pl. 56.1, ¶ 3. They assert, however, that based on the nature of their jobs, which entail occasionally time-sensitive and voluminous work, they must regularly work in excess of their regularly scheduled shifts. They perform this work either before their shifts, after their shifts, or during their meal breaks. Pl. 56.1 ¶ 10.

Plaintiffs record the hours they have worked in CityTime, an electronic timekeeping system that HRA implemented over the course of 2009 to 2011. Def. Response to Pl. 56.1 ¶ 16. By default, Plaintiffs are paid on a "pay-to-schedule" system, whereby they are compensated according to their regularly scheduled shifts. *Id*. ¶ 25. Employees may also log overtime hours worked, and are regularly compensated for those hours, but as discussed in greater detail below, the parties dispute the extent to which overtime work hours must be preapproved by supervisors before employees can request compensation for them. *See* Def. 56.1 ¶¶ 33-34 ("if a Plaintiff does not obtain prior authorization to work overtime but actually works in excess of their regularly scheduled shift, City policy is to pay Plaintiff for the overtime worked absent preapproval," and "overtime requests in CityTime are routinely approved even if they did not receive pre-approval to work such time."); Pl. 56.1 ¶¶ 48-49 ("HRA's policy is that overtime must be pre-approved

before it is worked," and "Plaintiffs are only compensated for pre-approved overtime."). At the end of each week, CityTime instructs the employees to certify and review their hours, including whether they worked any time outside of their regularly scheduled shifts. *See* Dkt. 165, Pl. Response to Def. 56.1 ¶¶ 39-40.

## II.      Procedural Background

On May 9, 2016, Plaintiffs filed their initial complaint in this action, which they amended on July 25, 2016. *See* Compl. (Dkt. 1); Am. Compl. (Dkt. 18). On January 23, 2017, the Court denied the City's motion to dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. 40. On February 14, 2017, Plaintiffs filed a Second Amended Complaint, which asserts four claims for violations of the FLSA's overtime provisions: (1) failure to pay overtime, (2) failure to properly calculate the regular rate of pay, (3) failure to pay overtime at a rate of one and one-half times the regular rate of pay, and (4) failure to pay overtime in a timely manner. *See* SAC ¶¶ 22–45. Plaintiffs seek declaratory judgment, an accounting of all compensation to which plaintiffs are entitled, liquidated damages, interest, attorneys' fees, and costs. *See id.* at 25. On June 29, 2017, the Court granted Plaintiffs' motion for conditional certification of a collective action. *See Hernandez v. City of New York*, No. 16-CV-3445 (RA), 2017 WL 2829816 (S.D.N.Y. June 29, 2017). Following discovery, the City moved for decertification, Dkt. 127, which the Court denied, *see* Dkt. 141 (report and recommendation from Magistrate Judge Aaron); Dkt. 149 (order adopting the report and recommendation). On June 15, 2020, the parties filed cross motions for summary judgment, each arguing that the undisputed factual record entitles them to prevail at this stage.

The City argues that this action should be dismissed in its entirety. It contends that it cannot be liable as a matter of law for uncompensated work performed by the Plaintiffs given

that the City has established procedures by which employees can record their time and request overtime compensation, and given that Plaintiffs failed to make such requests for the work in question. Dkt. 155 at 2. The City also maintains that Plaintiffs have not established that the City had "actual or constructive knowledge" that Plaintiffs performed uncompensated work, which is a prerequisite to Plaintiffs' ability to prevail on their off-the-clock claims. *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 365 (2d Cir. 2011). The City further contends that it is entitled to summary judgment on Plaintiffs' delayed payment, straight time, and regular rate claims. Finally, the City urges that even if the Court declines to grant the City's summary judgment motion as to liability, it should reject Plaintiffs' claim that they may recover liquidated damages and should limit the recovery period to two years in light of the lack of evidence that the City acted in bad faith or that any FLSA violations were willful. *See* 29 U.S.C. § 260 (courts may deny liquidated damages where the employer shows that it acted in in "good faith" and "had reasonable grounds" for believing that it did not violate the FLSA); 29 U.S.C. § 255(a) (where violations of the FLSA are not "willful," the limitations period is two years).

Plaintiffs dispute the City's argument regarding their off-the-clock claims as contrary to Second Circuit precedent and the decisions of a number of courts in this District, which have uniformly held that the mere fact that the City has established procedures for employees to request and record overtime does not absolve the City of liability for uncompensated off-the-clock work so long as the City knew or had reason to know that its employees were performing such work. *See* Dkt. 164 at 5 (citing *Lynch v. City of N.Y.*, 291 F. Supp. 3d 537, 549-51 (S.D.N.Y. 2018); *Foster v. City of New York*, No. 14 CIV. 4142 (PGG), 2017 WL 11591568, at *20 (S.D.N.Y. Sept. 30, 2017)); *see also Kuebel*, 643 F.3d at 363 ("[O]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation

4

simply because the employee failed to properly record or claim his overtime hours."). Plaintiffs

also argue that they are entitled to summary judgment on their off-the-clock claims, asserting

that the record establishes that they performed uncompensated overtime work of which the City

had actual or constructive knowledge. Plaintiffs further maintain that they are entitled to

summary judgment on their delayed payment, regular rate, and straight time claims, and on the

issues of liquidated damages and the statute of limitations.[1]

On March 31, 2021, the Court issued an order noting that the parties' cross-motions were

both denied, and that a written opinion would follow shortly. *See* Dkt. 176.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 56 authorizes a court to grant summary judgment if

the movant establishes that "there is no genuine issue as to any material fact and that

---

[1]     On July 13, 2020, Plaintiffs submitted a letter motion to file under seal certain papers
related to their opposition to Defendant's motion for summary judgment. *See* Dkt. 163. Plaintiffs
had informed the City of their intent to use certain documents—page 155 of the deposition
transcript of Georgia Pestana and the documents Bates stamped as CityTime 820-21, 837-38, and
856-57—which had previously been marked as confidential and privileged pursuant to a
stipulation between the parties. The City accordingly informed Plaintiffs' counsel that any filings
referencing those documents should be redacted, with the unredacted versions filed under seal.
Accordingly, while the letter motion to seal was pending, Plaintiffs filed five documents with
partial redactions. *See* Dkts. 167, 168, 169, 170, 175.

Having reviewed the letter motion to seal, the Court denies the motion. As Plaintiffs
noted in their letter motion, the information in question has already been released to the public in
related FLSA proceedings against the City, either through public docket filings or as exhibits in
an open trial before Judge Broderick. *See* Dkt. 163 at 1, n.1. As Judge Nathan recently noted in
confronting this precise issue, "Rarely, if ever, can the presumption of public access be
overcome when the information has already been made public." *Campbell v. City of New York*,
No. 16-CV-8719 (AJN), 2021 WL 826899, at *10 (S.D.N.Y. Mar. 4, 2021) (collecting cases).
The Court agrees with Judge Nathan that, "[b]ecause the information Defendant seeks to redact
has already been made public, . . . the presumption of public access to judicial documents is not
overcome in this case." *Id*. Plaintiffs are directed to file on ECF a letter attaching as exhibits the
unredacted versions of their previous filings.

the movant is entitled to judgment as a matter of law." *Roe v. City of Waterbury*, 542 F.3d 31, 35

(2d Cir. 2008). A fact is "material" if it "might affect the outcome of the suit under the governing

law," and it is "genuine" if "the evidence is such that a reasonable jury could return a verdict for

the nonmoving party." *Id.* (citations omitted). To survive summary judgment, the non-

movant "must do more than simply show that there is some metaphysical doubt as to the material

facts," and "may not rely on conclusory allegations or unsubstantiated speculation." *Bermudez v.

City of New York*, 790 F.3d 368, 374 (2d Cir. 2015) (internal quotation marks and citation

omitted).

The moving party has the initial burden of demonstrating that no genuine issue of

material fact exists. *See Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). If it satisfies

this burden, "the opposing party must come forward with specific evidence demonstrating the

existence of a genuine dispute of material fact." *Id.* "However, when the burden of proof at trial

would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of

evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which

case "the nonmoving party must come forward with admissible evidence sufficient to raise a

genuine issue of fact for trial." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d

114, 123 (2d Cir. 2013) (alterations, internal quotation marks, and citation omitted). In deciding

a motion for summary judgment, the Court must "construe the facts in the light most favorable to

the non-moving party and must resolve all ambiguities and draw all reasonable inferences

against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted).

Where, as here, the parties file cross-motions for summary judgment, "each party's

motion must be examined on its own merits, and in each case all reasonable inferences must be

drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

## DISCUSSION

### I.     Plaintiffs' Off-the-Clock Claim

The parties both move for summary judgment on the issue of the City's liability for failing to compensate Plaintiffs for uncompensated overtime work. Summary judgment is denied to both parties on this issue.

The FLSA provides that an employer may not "suffer or permit [an employee] to work" for more hours than the applicable 40-hour overtime threshold without paying the employee for those hours at a rate of not less than one and a half times his regular pay. *See* 29 U.S.C. §§ 207(a)(1); 203(g). To establish an employer's liability under the FLSA for an unpaid overtime claim, a plaintiff must prove (1) "that he performed work for which he was not properly compensated," and (2) "that the employer had actual or constructive knowledge of that work." *Kuebel*, 643 F.3d at 361.

Work under the FLSA means "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Holzapfel v. Town of Newburgh, N.Y.*, 145 F.3d 516, 522 (2d Cir. 1998) (citation omitted). Work "need not be performed during scheduled on-duty hours for an employee to receive compensation," *id.*, so long as it is "an integral and indispensable part of the employee's principal activities," *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 285 (2d Cir. 2008).

Although the FLSA requires an employer to "pay for work it suffers or permits, an employer cannot suffer or permit an employee to perform services about which the employer

knows nothing." *Holzapfel*, 145 F.3d at 524. Whether or not the employer knew of the work is "an issue of fact." *Murray v. City of New York*, No. 16-CV-8072 (PKC), 2020 WL 615053, at *8 (S.D.N.Y. Feb. 10, 2020). Such knowledge can be "actual or constructive," *Kuebel*, 643 F.3d at 365, and can be established based on inferences that the employer had "reason to know" of the uncompensated work, *id*. at 363. *See also Lawtone-Bowles v. City of New York*, No. 16-CV-4240 (AJN), 2020 WL 2833366, at *3 (S.D.N.Y. June 1, 2020) (a reasonable factfinder could infer the employer's knowledge of plaintiffs' uncompensated overtime work based on "testimony from Plaintiffs that their supervisors gave them keys and assigned them work outside of their regular shifts, observed them working outside of their scheduled shifts, informed their supervisors when they could not take meal breaks, informed their supervisors when they were working overtime that was not pre-approved, had requests for overtime that was not pre-approved denied, and turned in paperwork and keys to their supervisors at times past when their scheduled shift has been completed"). A court may "rely on deposition testimony from employees themselves about what their supervisors knew regarding uncompensated overtime." *Worley v. City of New York*, No. 17 CIV. 4337 (LGS), 2020 WL 730326, at *5 (S.D.N.Y. Feb. 12, 2020).

### A. The City is Not Absolved of Liability Merely Because the Plaintiffs Failed to Use the Established Procedures for Reporting Overtime

The City asserts that it is entitled to summary judgment on this issue because, it argues, "as a matter of law, an employer does not suffer or permit work where, as here, the employer (i) establishes procedures for employees to record their time; (ii) asks employees to certify that the time they submit is accurate; and (iii) pays employees for the time reported and certified." Dkt. 155 at 2. The City argues that Plaintiffs cannot hold it liable for uncompensated work that they failed to record or request, particularly when they signed a certificate at the end of each week

stating that the hours they recorded and submitted are correct. As a matter of law, the City maintains, it cannot be said to have had actual or constructive knowledge of hours worked when the employees failed to give notice through the City's established procedures that they performed such work. *See* Dkt. 155 at 9. The City relies on the Sixth Circuit's decision in *White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869 (6th Cir. 2012), which held that "[w]hen [an] employee fails to follow reasonable time reporting procedures she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA." *Id.* at 877.

This argument, however, is contrary to Second Circuit precedent. An employer may be said to have knowledge of uncompensated work "even where the employer has not requested the overtime be performed or does not desire the employee to work, *or where the employee fails to report his overtime hours*." *Gotham Registry*, 514 F.3d at 288 (emphasis added). That is because "an employer's duty under the FLSA to maintain accurate records of its employees' hours is non-delegable." *Kuebel*, 643 F.3d at 363. *See also* 29 U.S.C. § 211(c) (requiring employers subject to the FLSA to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records"); *Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 946 (2d Cir. 1959) (an employer may not fulfill its obligation to maintain accurate records "by attempting to transfer his statutory burdens of accurate record keeping . . . to the employee. The employer at its peril ha[s] to keep track of the amount of overtime work by those of its employees ....") (internal quotations marks and citations omitted). In *Kuebel*, the Second Circuit vacated a grant of summary judgment to the employer that had been premised on the employee's admitted falsification of his own timesheets, holding that "once an employer knows or has reason to know

that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours." *Kuebel*, 643 F.3d at 363. *See also Holzapfel*, 145 F.3d at 524 (same). If the employer does not wish that such overtime work be performed, it is the employer who "has a duty to make every effort to prevent its performance." *Gotham Registry*, 514 F.3d at 288. The "key issue" is therefore "whether there is evidence in the record showing [the] defendant had actual or constructive knowledge that [the] plaintiff engaged in" uncompensated overtime work, "regardless of whether [the] plaintiff followed [the employer's] policy about recording overtime." *Seward v. Int'l Bus. Machines Corp.*, No. 08-CV-3976 (VB), 2013 WL 142006, at *3 (S.D.N.Y. Jan. 2, 2013).

In light of this precedent, the City's primary legal argument—that Plaintiffs' failure to take advantage of the City's procedures for reporting overtime absolves the City of liability—has been repeatedly rejected by judges in this district in similar FLSA cases brought against the City. *See, e.g., Murray*, 2020 WL 615053, at *12 ("the City's overtime-approval process and plaintiffs' successful use of that process does not preclude its liability"); *Lynch*, 291 F. Supp. 3d at 550 (summarizing the City's argument and noting that "the law does not allow the employer to delegate its duty of record keeping to its employees in this way"); *Foster*, 2017 WL 11591568, at *21 ("[A]n employer cannot pass on all responsibility for ensuring proper overtime pay to its employees, because its record-keeping duty under the FLSA is non-delegable."); *Lawtone-Bowles*, 2020 WL 2833366, at *4 ("The City has made this argument repeatedly in FLSA overtime litigation in this District and it has been unanimously rejected."); *Worley*, 2020 WL 730326, at *7 ("Defendants' arguments have been expressly rejected by multiple courts within this Circuit regarding overtime claims by City employees who did not record some of their time in CityTime.").

It is true that rule of *Kuebel* and *Holzapfel*—that "once an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours," *Kuebel*, 643 F.3d at 363—is designed to prevent a situation in which employer sets up procedures for reporting overtime but *discourages* employees from using it. As the Second Circuit made clear, a "contrary conclusion would undermine the remedial goals of the FLSA, as it would permit an employer to obligate its employees to record their own time, have its managers unofficially pressure them not to record overtime, and then, when an employee sues for unpaid overtime, assert that his claim fails because his timesheets do not show any overtime." *Id*. at 364. The City accordingly argues that this principle is inapplicable here, because "it is undisputed Plaintiffs are explicitly and repeatedly instructed to record and request overtime for all hours worked in excess of their shift." *See* Dkt. 155 at 13 (citing Def. 56.1 ¶¶ 37, 41, 44, 50, 68, 69, 80). *See also* Defendant's Reply Memorandum of Law in Support of its Motion for Summary Judgment, Dkt. 171, at 3 ("Unlike in *Kuebel*, . . . there is absolutely no evidence that Defendant 'instructed' Plaintiffs to 'shave' hours off of their timesheets in order to submit timesheets that fell under the 40 hour threshold.").

The Court does not agree with this characterization of the record. Even if "the reach of the[ ] precedents [discussed above is limited] to situations where the employees were discouraged from reporting overtime," on the basis of the record before the Court, "a reasonable factfinder could conclude that . . . Defendant discouraged the reporting of accurate overtime that was not pre-approved." *Lawtone-Bowles*, 2020 WL 2833366, at *4. Plaintiffs have adduced evidence that the City's policy and/or practice is to not pay for overtime work that has not been preapproved, which discourages employees from requesting pay for their off-the-clock work.

11

Dkt. 164 at 9; *see* Pls. 56.1 ¶¶ 48-49 (citing statements in the Rule 30(b)(6) testimony of Alson Goddard and Madeline Ospino to the effect that all overtime must be preauthorized by a supervisor, and that if an employee works outside their shift without preauthorization, they are not paid); Dkt. 160-12 at 3 (HRA Proecdure No. P-13-01) ("All paid overtime must be pre-authorized."); Pls. 56.1 ¶ 51 (citing deposition testimony of Plaintiffs Baez, Brown, Crosson, Donalds, and Gorham that employees can only submit overtime requests in CityTime for time that has been pre-approved). Plaintiffs also cite the deposition testimony of Plaintiffs who were instructed not to record the overtime in CityTime when it had not been pre-authorized. *See* Pls. 56.1 ¶ 43 (Plaintiff Baez was instructed to complete interviews that ran past her shift end time, but not to record the overtime when she reported post-shift work; Plaintiff C-Jacinthe was told she could not submit overtime requests on occasions when her work went beyond her regular shift time). The City disputes that this is in fact its policy, and maintains that overtime requests in CityTime are routinely approved even if they employee did not receive preapproval. *See* Def's. 56.1 ¶¶ 33–35; *see* Dkt. 156-16 at 16 (Pestana testifying that the City's position is "you should seek pre-authorization for overtime, but we will pay you if you didn't get pre-authorized"). Considering the City's motion for summary judgment and viewing this evidence in the light most favorable to the Plaintiffs, a reasonable fact finder could conclude that the City's policies and practices discouraged or prohibited the submission of overtime that was not preauthorized.

## B. Additional Factual Questions Preclude Summary Judgment for Either Party

Having rejected the Defendant's principal legal argument, the Court proceeds to consider whether the record evidence is such that either party is entitled to summary judgment on the questions of whether Plaintiffs performed uncompensated work outside of their regular shifts and whether the City had knowledge of that work. *Kuebel*, 643 F.3d at 359.

1.  Evidence of Uncompensated Work

The Court first finds that the undisputed factual record supports a finding that Plaintiffs performed some amount of uncompensated work. Plaintiffs put forward extensive evidence that they performed overtime work for which they were not compensated. Using the CityTime system, employees must clock in when they arrive at work and clock out at the end of work. Pls. 56.1 ¶ 18. Employees are not automatically paid for time they are clocked in; they are paid based on their scheduled work hours and any preapproved overtime. *Id*. ¶ 25. However, a number of Plaintiffs testified that they regularly clocked in before their usual start-time and began working immediately, and also that they would regularly finish working after their scheduled end-time. *Id*. ¶¶ 30-31. They also testified that they regularly performed work during their uncompensated meal periods. *Id*. ¶ 39. A number of Plaintiffs testified in their depositions that the "often-emergent" nature of their work as fraud investigators required them to continue to work on assignments outside of their scheduled shifts. *Id*. ¶¶ 9–10. Particularly at the end of the day, if a fraud investigator is assigned to do something or is still interviewing a client, he or she is expected to finish the assignment before going home. *See id.* (citing Brown Tr. 47; Rodriguez Tr. 34); *see also* Dkt. 160-5 at 2 (Fraud Investigator Job Posting Notices) (including among a fraud investigator's job responsibilities the need to "respond to large volumes of *time sensitive* telephone calls from clients, applicants, and the public regarding allegations of fraudulent activities") (emphasis added). Plaintiffs' expert, Dr. Lanier, reviewed the CityTime data provided by the City and asserts that "plaintiffs have recorded in CityTime 435,426 pre- and post-shift uncompensated minutes over the weekly 40-hour overtime threshold from the start of their three-year eligibility period . . . through November 24, 2018." Dkt. 160-10 ¶ 11.

The City's only meaningful response to this evidence is to argue that "Plaintiffs do not establish as a matter of law that they were actually performing work before or after their shift and during their meal break," as they "cite to no evidence – other than their own testimony – to establish that they were working outside their regular schedule and not being paid for such time." Dkt. 161 at 7. "Absent from the record," the City notes, "is any documentary evidence supporting this claim." *Id*.

This argument fails. At the summary judgment stage, "an employee need only present sufficient evidence to show the amount and extent of the uncompensated work as a matter of just and reasonable inference." *Kuebel*, 643 F.3d at 362 (internal quotation marks omitted). "A plaintiff may 'show the amount and extent of that work as a matter of just and reasonable inference . . . solely through his own recollection.'" *Campbell*, 2021 WL 826899, at *4 (quoting *Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d 666, 674 (S.D.N.Y. 2011)). *See also Murray*, 2020 WL 615053, at *8 ("A plaintiff's own recollection, if credited by a trier of fact, can be sufficient to demonstrate that the plaintiff worked overtime without compensation."); *Lynch*, 291 F. Supp. 3d at 549 (crediting the plaintiffs' "extensive evidence, primarily in the form of their depositions, that they frequently worked before and after work, as well as during their meal times, without being compensated."); *Worley*, 2020 WL 730326, at *5 ("Courts often rely on deposition testimony from employees themselves about what their supervisors knew regarding uncompensated overtime."). Defendants do not point to any evidence to counter Plaintiffs' deposition testimony that they worked some amount of uncompensated overtime hours. Accordingly, the Court finds that there is no genuine dispute of material fact concerning this issue.

2.   Evidence of the City's Knowledge

An employer is only liable, however, for an employee's uncompensated work time if it "knows or has reason to know that an employee is working overtime." *Holzapfel*, 145 F.3d at 524. On this issue, the Court finds there to be an issue of triable fact as to whether the City had actual or constructive knowledge of the fact that Plaintiffs were working uncompensated overtime.

Plaintiffs marshal the following evidence in support of their position that the City had knowledge of their uncompensated overtime work. First, Plaintiffs cite to their deposition testimony that supervisors had knowledge of their uncompensated pre-shift, post-shift and meal period work. Plaintiffs testified that they received work assignments from supervisors outside of their scheduled shifts, that their supervisors witnessed them performing work outside of their regular shifts and expected them to do so, and that they were expected to perform an amount of work that could not be reasonably completed within the normally scheduled shift. Pls. 56.1 ¶¶ 41–43. Plaintiffs also argue that the City can be said to have knowledge of uncompensated overtime because managers and supervisors must review the plaintiffs' timesheets in CityTime. *See id*. ¶¶ 45–46. As noted above, HRA employees clock in using CityTime when they arrive, and clock out when they leave, even if they arrive earlier or depart later than their scheduled shift. Plaintiffs cite evidence (disputed by the City) that CityTime is an accurate record not just of the time an employee is physically present in the office but of an employee's "work time," *see* Pls. 56.1 ¶ 17, and they note that employees are generally expected to be working whenever they are on agency premises, *id*. ¶ 29. Accordingly, Plaintiffs urge, a supervisor reviewing an employee's timesheet can see when an employee has been working for a greater number of hours than he or she is being compensated for.

The City disputes this characterization of the record, arguing that the mere facts that "supervisors see Plaintiffs perform work" outside of their shift hours and that "CityTime tracks and records all time that Plaintiffs are present at the workplace" are insufficient to "prove actual or constructive knowledge." Dkt. 161 at 8. Even if supervisors saw Plaintiffs at their workplaces doing work outside their usual schedules, the City argues, they "had no reason to believe Plaintiffs were performing *uncompensated* work." *Id.* at 10. The City points to evidence that Plaintiffs regularly submitted requests for overtime compensation when they worked beyond their regularly scheduled shifts, *see* Def. 56.1 ¶¶ 23, 68, that 97 percent of their overtime requests since May 9, 2013 were approved, *see id.* ¶ 80, and that they received a total of $1,287,668 in overtime compensation since May 9, 2013, *id.* ¶ 76. Accordingly, the City argues, a supervisor or manager who interacts with or assigns work to an employee outside that employee's regular shift is not necessarily armed with knowledge that the employee is working uncompensated overtime, because the supervisor does not know whether the employee has requested or will request compensation for that time through CityTime. *See Campbell*, 2021 WL 826899, at *5 (summarizing Defendant's argument that "even if supervisors saw Plaintiffs working during those times, there was no way for a supervisor or those in charge of time-keeping to know whether that person had not requested or would not request overtime pay").

Herein lies the key dispute. Plaintiffs, as noted earlier, assert that under City policies and practice they cannot request overtime when it has not been preapproved. *See* Pls. 56.1 ¶¶ 48–51. Defendants maintain that this is not the case. *See* Def. 56.1 ¶¶ 33–35. This dispute is material to the question of what a supervisor could be said to know on the basis of seeing an employee working during non-shift hours. If the employee could still later request overtime pay for that time, then the supervisor might have reason to believe that he or she would do so, and would not

necessarily know whether or not the employee was working *without compensation*. If, by contrast, it was not realistically possible for an employee to make a request for overtime without preauthorization, then a supervisor who understands what work has or has not been preauthorized would know full well whether or not an employee was working overtime without compensation. Put another way, "if Defendant had a policy or practice of denying [requests for overtime compensation that had not been preauthorized], then Defendant should have been aware that Plaintiffs would sometimes have to unexpectedly work overtime due to the emergent nature of their responsibilities and that these hours would go unpaid." *Campbell*, 2021 WL 826899, at *6. As in *Campbell*, the Court finds that this dispute of fact precludes summary judgment to either party on the question of whether the City had actual or constructive knowledge that Plaintiffs were working uncompensated overtime hours. As a result, summary judgment is denied more broadly on Plaintiffs' off-the-clock claims.

## II.      Plaintiffs' Delayed Payment Claim

The parties also cross-move for summary judgment on the issue of the City's liability for alleged delayed payments of overtime. According to Plaintiffs, they are owed $9,916 in liquidated damages as a result of the City's failure to promptly compensate plaintiffs for overtime worked going back three years from the date this case was filed. *See* Dkt. 160-10 at ¶¶ 18–19 (Lanier Decl.). Plaintiffs rely on the deposition testimony of plaintiffs who reported receiving delayed payments of overtime. *See, e.g.,* Dkt. 156-13 at 18–19 (Quito Dep.); Dkt. 156-22 at 21 (Martinez Dep.).

"Although the FLSA does not explicitly require that wages be paid on time, courts, including the Second Circuit, have long interpreted the statute to include a prompt payment requirement." *Conzo v. City of New York*, 667 F. Supp. 2d 279, 288 (S.D.N.Y. 2009) (citing

*Rogers v. City of Troy*, 148 F.3d 52, 55 (2d Cir. 1998)). *See also Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F. Supp. 3d 336, 353 (S.D.N.Y. 2014) ("While the statutory language of the FLSA does not prescribe any particular payment schedule, courts have consistently interpreted Section 206(a) of the statute to include a prompt payment requirement.").

The relevant Department of Labor guidance concerning the prompt payment of overtime compensation provides as follows:

> There is no requirement in the Act that overtime compensation be paid weekly. The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends. When the correct amount of overtime compensation cannot be determined until some time after the regular pay period, however, *the requirements of the Act will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable.* Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made.

29 C.F.R. § 778.106 (emphasis added). An employer's liability for delayed overtime payments therefore hinges not only on *when* the payments were made, but also on whether the employer took efforts to make the payments "as soon after the regular pay period as is practicable." *See Conzo*, 667 F. Supp. 2d at 288 (denying summary judgment to Plaintiff when a material issue of fact existed as to why overtime payments were made late); *Foster*, 2017 WL 11591568, at *36–37 (same); *Lynch*, 291 F. Supp. 3d at 552 (same); *Worley*, 2020 WL 730326, at *9 (same, finding the City had raised "a triable issue of fact as to whether Defendants were responsible for the late payments, or whether Plaintiffs' mistakes in recording and submitting the requisite forms caused delays on a few isolated occasions").

The City argues that it is entitled to summary judgment on this claim because (1) Plaintiffs' only evidence of delayed payments is their own testimony; (2) because 94 percent of cash overtime payments to Plaintiffs were received within 36 days of the date they were earned;

and (3) because 412 Plaintiffs in the class did not experience delayed payments. *See* Dkt. 155 at 17; Dkt. 156-47 ¶ 10(G); *see also* Def. 56.1 ¶ 83. This argument fails. A reasonable jury would be entitled to credit Plaintiffs' own testimony on this issue, *see Lawtone-Bowles*, 2020 WL 2833366, at \*4, and the fact that many plaintiffs did not experience delayed payments does not preclude the City's liability for delays experienced by the remaining plaintiffs. *See* Def. 56.1 ¶ 83. *Cf. Lynch,* 291 F. Supp. 3d at 551 (explaining that even if the Defendant calculated the regular rate of pay correctly "94% of the time," "[t]his is inadequate to evade liability" under the FLSA, "as 94% of the time is not 100% of the time.").

However, while the Court declines to award summary judgment to the City on this issue, it also cannot grant summary judgment to Plaintiffs given the parties' dispute concerning why any payments were delayed and "whether it would have been impracticable to pay Plaintiffs earlier." *Lawtone-Bowles*, 2020 WL 2833366, at \*4. The fact that the majority of Plaintiffs did receive prompt overtime compensation could be interpreted by a reasonable jury as evidence "that the untimely payments were flukes, caused by unusual issues that made faster payment impracticable." *Id*. Moreover, although Plaintiffs cite testimony that the delayed payments resulted from the failures of their supervisors and timekeepers, *see* Pls. 56.1 ¶ 76, the City points to testimony that requests for compensation can be delayed because of an employee's own failures to properly submit his or her time. *See* Def. 56.1 ¶ 75; Dkt. 156-2 at 29. Accordingly, the Court finds there to be a triable issue of fact as to what caused any delay of overtime payments, and whether the payments could practicably have been made sooner. *See Conzo*, 667 F. Supp. 2d at 288; *Foster*, 2017 WL 11591568, at \*37; *Lynch*, 291 F. Supp. 3d at 552; *Worley*, 2020 WL 730326, at \*9. Summary judgment is accordingly denied to both parties on this issue.

### III.     Plaintiffs' Straight Time Claim

The parties next cross-move for summary judgment on Plaintiffs' "straight time" claim. Plaintiffs allege that the City has, in weeks where plaintiffs worked over 40 hours, provided overtime pay and compensatory time at a straight-time rate, rather than at the time-and-a-half rate that the FLSA requires. *See* 29 U.S.C. § 207(a) (providing that compensation for hours worked in excess of forty hours per week must be compensated at "a rate not less than one and one-half times" the regular rate). Section § 207(o)(1) of the FLSA permits public-sector employees to be compensated with time off instead of cash, but it likewise provides that compensatory time must accrue at the time-and-a-half rate. *See Lynch*, 291 F. Supp. 3d at 548.

Summary judgment for either side is inappropriate on this claim. The City argues only that "Plaintiffs have adduced no admissible evidence of any miscalculation of their compensatory time calculations," and cites the portion of its expert's declaration that "[t]he combined amount of overtime paid in compensatory time to Plaintiffs since May 9, 2013 . . . totals 45,532 hours." Dkt. 156-47 ¶ 10(C). Needless to say, however, the mere fact that Plaintiffs were paid a significant amount of compensatory time does not preclude the City's liability for any time that was paid out at an unlawful rate. Plaintiffs, meanwhile, point to an HRA memorandum providing that "authorized voluntary overtime" is compensated "in time off at the rate of straight time (1x)." *See* Pls. Additional Rule 56.1 Statement of Facts, Dkt. 166, ¶ 94. This policy lends credence to Plaintiffs' claim. But the only evidence Plaintiffs cite to support their claim that they received compensatory time off at the straight-time rate is the Lanier Declaration at paragraphs 16–17, *see* Dkt. 160-10, which states that "Plaintiffs are owed $27,859 of total back pay . . . for the City's payment of the straight rate, instead of one-and-one-half times the FLSA regular rate of pay for hours worked over 40 in a workweek." Dr. Lanier's testimony is

"insufficient to preclude a genuine dispute of material fact as to the amount owed due to the failure" of the City to compensate at the 1.5x rate. *See Campbell*, 2021 WL 826899, at *8. Lanier has not "explain[ed] in any detail how he reached this specific number," such that "a reasonable juror could decline to credit [his] conclusory testimony on this issue." *Id*. at *7. Accordingly, both parties' summary judgment motions are denied on this issue.

## IV.    Plaintiffs' Regular Rate of Pay Claim

The parties next cross-move for summary judgment on Plaintiffs' regular rate claim. As noted above, Plaintiff alleges that the City has "failed to include certain premium payments such as night shift differential pay and meal money payments that are made in addition to plaintiffs' regular pay in the regular rates of pay," and therefore that the time-and-a-half overtime payments made to Plaintiffs were improperly diminished. *See* Dkt. 42 (Second Amended Complaint) ¶ 29. According to Plaintiffs' expert, they are owed $1,512 of total back pay for the City's failure to properly calculate the regular rate of pay.

An employee's regular rate of pay—the "keystone" for calculating the overtime rate of pay, *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945)—must include "all remuneration for employment paid to, or on behalf of, the employee," with several enumerated exceptions. 29 U.S.C. 207(e). "An employee's regular rate of pay includes shift differentials, including both the night shift differential pay and/or meal allowance payments in weeks in which the plaintiff worked overtime." *Lynch*, 291 F. Supp. 3d at 547 (citing *Eka v. Brookdale Hosp. Med. Ctr.*, 2016 WL 11263669, at *5 (E.D.N.Y. Sept. 2, 2016), *report and recommendation adopted*, 2016 WL 6143343 (E.D.N.Y. Sept. 30, 2016)).

The City maintains that CityTime "includes the nightshift differential in an employees' regular rate of pay for purposes of calculating overtime compensation." Dkt. 155 at 17–18 (citing

Erath Decl. ¶ 10(H)), and that Plaintiffs received $23,360 in night shift differential payments during the relevant period. But the cited paragraph from the Erath declaration states only that Plaintiffs have *received* the night-shift differential payments, not that such differentials have been included in calculations of the regular rate of pay for purposes of determining overtime pay. Plaintiffs, meanwhile, assert that the City "did not include the night shift differential pay in the regular rate of pay where plaintiffs earned night shift differential pay and worked overtime in the same week." *See* Pls. 56.1 ¶ 66. But the evidence proffered to support this claim—paragraphs 14 and 15 of Dr. Lanier's declaration, *see* Dkt. 160-10 ¶¶ 14–15—is once again conclusory and does not establish that the City failed to include the nightshift differentials when calculating the regular rate of pay. The parties have pointed to no other evidence concerning whether or how the differential payments are or are not included in calculating the regular rate of pay. Summary judgment is accordingly denied to both parties on this issue.

## V.     Liquidated Damages and Willfulness

Both sides seek summary judgment on the related issues of (1) whether Plaintiffs are entitled to liquidated damages, or whether instead the Court may deny such damages because the City has acted "in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA," *Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (quoting 29 U.S.C. § 260); and (2) whether the applicable limitations period for this action is extended to three years because of the City's "willful" violations of the FLSA, *see* 29 U.S.C. § 255(a).[2]

---

[2] *See Viera v. City of New York*, No. 19-CV-5773 (SDA), 2021 WL 68982, at *7 (S.D.N.Y. Jan. 8, 2021) (analyzing these two questions together); *Campbell*, 2021 WL 826899, at *9 (same); *Lawtone-Bowles*, 2020 WL 2833366, at *5 (same).

The FLSA generally compensates employees who have been denied overtime pay with double damages. "Any employer who violates [the overtime provisions] shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). A district court, however, has discretion to deny these liquidated damages where "the employer shows that it acted in subjective good faith with objective reasonable grounds for believing that its acts or omissions did not violate the FLSA." *Lynch*, 291 F. Supp. 3d at 548. "The employer bears the burden of proving good faith and reasonableness, but the burden is a difficult one, with double damages being the norm and single damages the exception." *Herman v. RSR Sec. Servs. Ltd*, 172 F.3d 132, 142 (2d Cir. 1999). "To establish 'good faith,' a defendant must produce plain and substantial evidence of at least an honest intention to ascertain what the Act requires and to comply with it." *Reich v. S. New England Telecommunications Corp.*, 121 F.3d 58, 71 (2d Cir. 1997) (internal quotation marks and citation omitted).

The FLSA also contains a two-year statute of limitations, which may be extended to three years where the plaintiff has proven that defendant's violation was "willful." *See* 29 U.S.C. § 255(a); *Herman*, 172 F.3d at 141. "[T]o prove a willful violation of the FLSA within the meaning of § 255(a), it must be established that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Parada v. Banco Indus. De Venez.*, 753 F.3d 62, 71 (2d Cir. 2014) (quoting *Reich v. Waldbaum, Inc.*, 52 F.3d 35, 39 (2d Cir. 1995)). "If an employer acts unreasonably, but not recklessly, in determining its legal obligation, its action should not be considered willful." *Id*. In other words, mere negligence on the part of an employer is not enough to establish willfulness. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). A plaintiff bears the burden of proving that a defendant's

violation was willful by presenting evidence that the employer affirmatively knew it was violating the FLSA. *See Foster*, 2017 WL 11591568, at *40.

The City argues that it is entitled to summary judgment on these issues because of the record evidence showing that it took steps to ensure compliance with the FLSA, including providing training to employees on using the CityTime system, *see* Def. 56.1 ¶ 67; seeking advice of counsel regarding the certification employees must sign on their weekly timesheets, *see id*. ¶ 48; and convening weekly meetings with counsel to "ensure that CityTime is programmed in such a way that it complies with the FLSA," *id*. ¶¶ 84, 85. Plaintiffs respond by observing that the City has already been found liable for the sort of overtime violations alleged here, but has taken no steps to change its practices. *See, e.g.*, *Foster*, 2017 WL 11591568 (granting summary judgment to plaintiffs). Plaintiffs also point to their evidence, discussed above, that the City had knowledge of Plaintiffs' uncompensated overtime work, and that its agents understood that employees must be paid for overtime work of which the employer knows or has reason to know.

The Court denies summary judgment to both Plaintiffs and Defendant on this issue, "see[ing] no reason in this case to depart from the general reluctance of courts to resolve the question of willfulness on a motion for summary judgment." *Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 503 (S.D.N.Y. 2015). The City's evidence of its efforts to comply with the FLSA, including through seeking the advice of counsel, are sufficient to preclude summary judgment for Plaintiffs on this issue. *See Worley*, 2020 WL 730326, at *10. At the same time, as Judge Nathan noted in a similar case, despite the City's documented efforts to comply with the FLSA, because Plaintiffs "have adduced evidence that their supervisors observed them working overtime and had reason to know that this time was not being compensated," a reasonable jury "could conclude that Defendant lacked the requisite subjective good faith and objective

reasonableness, and willfully violated the FLSA." *Lawtone-Bowles*, 2020 WL 2833366, at *5.

The Court accordingly declines to resolve the issues of liquidated damages and the statute of

limitations at the summary judgment stage.

## CONCLUSION

For the foregoing reasons, both motions for summary judgment (Dkts. 153, 157) are

denied, and Plaintiff's letter motion to seal (Dkt. 163) is denied.

SO ORDERED.

Dated:   May 5, 2021
         New York, New York

_____
Ronnie Abrams
United States District Judge